### Artie Craiger v. The State.

#### No. 2908.    Decided October 19, 1904.

**1.—Murder—Charge of Court—Provoking Difficulty—Self-Defense.**

Where the evidence for the State on a trial for murder might justify a charge on provoking a difficulty, but the evidence of the defense more cogently showed that the difficulty was brought on by the deceased and not the defendant, it was clearly incumbent on the court to charge the converse of the theory of provoking a difficulty.

**2.—Same—Charge of Court—Self-Defense—Weight of Evidence.**

On a trial for murder the court erroneously charged on the question as to whether or not the defendant was justifiable, that the facts and circumstances must be viewed from the standpoint of the defendant, but that he would not be justified in killing deceased, because deceased had followed him, or because deceased had whistled at defendant's horse, and that the only act that would justify the defendant in killing deceased would be such acts upon the part of deceased or words coupled with his acts as were reasonably calculated to produce in the mind of the defendant a reasonable expectation or fear of death or serious bodily injury. Such charge was. on the weight of the testimony as it singled out but two of the facts which led up to the difficulty.

**3.—Same—Charges Requested and Refused—Provoking the Difficulty.**

See opinion for charges requested and refused on the subject on provoking the difficulty which should have been given.

**4.—Same—Deadly Weapon—Charge of Court—Statutes Construed—Question of Fact.**

Where on a trial for murder the weapon used is described as an old knife, with one handle nearly off; that it could be thrown open and shut; that it would stand open when held straight, but if held in the least bit slanting it would fall shut; that the back spring was broken; that the defendant got it out of his pocket, and that he made but one thrust with it; that no deadly conflict was contemplated by defendant and that, according to his theory, he was simply asking deceased for an amicable settlement between them, and that probably the deceased provoked the difficulty, the court should have submitted to the jury articles 717 and 719, Penal Code, defining homicide when committed by means of an instrument not likely to produce death unless there was an intention to kill, etc., and the fact that death resulted can not be held as proof that the weapon producing it was necessarily a deadly weapon, and the fact should have been submitted to the jury.

Appeal from the District Court of Angelina. Tried below before Hon. Tom C. Davis.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the State penitentiary.

The opinion states the case.

*I. D. Fairchild, T. M. Jordan, J. T. Weeks, W. J. Townsend* and *E. J. Mantooth,* for appellant.—On question of deadly weapon and intent to kill:· Thompson v. State, 24 Texas Crim. App., 380; Newsome v. State, 75 S. W. Rep., 296; Fitch v. State, 37 Texas Crim. Rep., 500; 36 S. W. Rep., 584; Lax v. State, 65 id., 88; Boyd v. State, 28 Texas Crim. App., 137; Hill v. State, 11 id., 456; Nichols v. State, 24 id., 137; Lee v. State, 77 S. W. Rep., 195.

*Howard Martin,* Assistant Attorney-General, for the State.—Franklin v. State, 30 Texas Crim. App., 628, id., 34, Texas Crim. Rep., 286.

BROOKS, JUDGE.—This conviction is for murder in the second degree, the punishment is assessed at five years confinement in the penitentiary.

The evidence for the State in substance shows that deceased, Henry Falvey, in company with Tom Dubose and others, were standing on the gallery of deceased's father, who was running a store at the town of Burke, when defendant passed riding a horse; that Tom Dubose gave a derisive whistle, directed at defendant and his horse. This enraged defendant and he stopped, asked the parties on the gallery if they had anything against his horse or himself. Receiving no reply, defendant went a short distance, and after a little while turned and hitched his horse near the store of Meeks; went into the store, and was looking at a drummer display his goods. Deceased and several of his companions who were on the gallery of his father's store, came across to the store where defendant was. After remaining there a few moments, defendant called deceased out on the gallery, with the statement that he wanted to see deceased. When deceased reached the gallery, defendant asked deceased what he was whistling at his horse for. Deceased denied that he had done so, but stated that Tom Dubose (who was then in the Meeks' store) did the whistling. Thereupon Dubose ran behind the counter in the store. Defendant first asked where Dubose was, and when informed of the fact, turned upon deceased and applied various vile epithets, such as liar and son-of-a-bitch, stating deceased did the whistling at his horse. Deceased picked up a piece of white pine plank and proposed to resent these indignities, and at that juncture his brother, J. C. Falvey interfered and stopped the difficulty. A moment thereafter, deceased having secured another piece of plank, told defendant that he would not repeat the insults he had offered him, which being done, deceased struck defendant; defendant grabbed deceased by the arm and stabbed him with a pocket knife, which wound penetrated deceased's heart, and he died in a few moments. This is in substance the State's case. Defendant testified, in substance, to a complete case of self-defense, which is to some extent supported by his witnesses. Defendant further testified that the knife which inflicted the injury: "Was an old knife, with one handle nearly off, and you could just throw it open and shut. It would stand open if

you would hold it straight, but if you held it the least bit slanting, it would fall shut. The back spring was broken." This is all the description we find in the record of the knife.

The charge of the court in the main is an admirable presentation of the law of murder in the first and second degrees, manslaughter and self-defense. The court also properly applied the law applicable to the imperfect right of self-defense, telling the jury in substance that if defendant provoked the difficulty with intent to kill, he would be guilty of murder; or if he provoked the difficulty without the intent to kill he would be guilty of no higher offense than manslaughter. The charge of the court, as suggested by the assistant attorney-general, seems to announce the law as laid down by this court in Franklin v. State, 30 Texas Crim. App., 628, and 34 Texas Crim. Rep., 286. There are various criticisms of the charge of the court, but a careful reading of the same demonstrates they are not well taken, and do not present reversible error. However, we deem it necessary to pass on one objection urged as an erroneous omission in the charge. Appellant insists that the court should have charged articles 717 and 719, Penal Code. Under article 51, Penal Code, the intent is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act. Under article 717, if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears. As stated in Shaw v. State, 34 Texas Crim. Rep., 435, we have the following principles announced under the provisions of this article: first, that the weapon or means used must possess the quality of a deadly weapon without regard to the manner in which it is used; second, though not deadly the manner of its use must show an evident intention to kill. In other words, the character of the weapon can not be fixed or determined by the manner of its use. It must ordinarily be a deadly weapon per se to warrant a presumption arising from its use; or if not such a weapon the intent to kill must evidently appear from the manner of its use. Now, applying the principles of this article to the facts of this case, we hold that the weapon may be conceded not to be per se a deadly weapon since the length and character of the same is not disclosed; but we hold that the intent to kill evidently appears from the manner of its use, and hence the provisions of article 717 are not required to be given in charge to the jury, as the issue thereby required to be charged is not raised by the evidence to wit: a lack of evident intent to kill. The facts, as collated above, show that appellant provoked the difficulty, for as he testifies he had had previous difficulties with deceased; that deceased had provoked him on many occasions; and here upon the scene of the killing he had a knife drawn and as soon as his outrages and indignities to deceased had provoked deceased to resent it, he grabbed deceased by the arm and plunged the knife into his heart, from which he died instantly. As laid down by this court in Shannon

v. State, 35 Texas Crim. Rep., 2, defendant had a right to approach deceased and ask him why he offered him an indignity, but this was not evidently the intent and purpose of defendant in calling deceased out on the gallery, since the moment deceased denied offering appellant any indignity, he cursed and abused him and would take no character of explanation, although deceased stated that the party who did offer the indignity was then in the house. This being true, the intent to kill, the means and manner used to accomplish it, and the whole surroundings indicate clearly that appellant did have the evident intent to kill at the time he made the felonious assault upon deceased. Article 719, Penal Code, embodies the law of a case in which there was no intent to kill and when the homicidal act is divested of an evil or cruel disposition. The facts of this case do not present any phase of this statute, and hence the court did not err in not charging either article 717 or article 719, as insisted by appellant. For a discussion of this question see Honeywell v. State, 40 Texas Crim. Rep., 199; Perrin v. State, 9 Texas Ct. Rep., 533; Baker v. State, 81 S. W. Rep., 1215. The latter case in most, if not all of its facts, is like the case at bar. The only difference we discover is that, in the Baker case the length of the knife blade is shown to have been two and five-eighths inches, while the length of the blade is not shown in this record. However, the whole tone and trend of the evidence shows that appellant used a deadly weapon and had the evident intention to kill at the time he inflicted the deadly blow.

The last insistence of appellant is that the court erred in not granting him a new trial on account of the misconduct of the juror George Manley. The misconduct consists, as appellant alleges, in the juror on his voir dire suppressing a preconceived ill will against appellant. To sustain this contention, appellant attaches the affidavit of several parties tending to sustain him. These affidavits were controverted by the State, and issue thereby joined, which issue the court decided against appellant. Under the authorities of this court we are not called upon to review the decision of the court below in the matter. Belcher v. State, 37 S. W. Rep., 428; Cockerell v. State, 32 Texas Crim. Rep., 585.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### June 21, 1905.

DAVIDSON, PRESIDING JUDGE.—We have carefully reviewed this record in the light of the motion for rehearing, and are of the opinion that there was error in affirming the judgment, and now conclude that it should be reversed. The substance of the evidence is that deceased, Henry Falvey, in company with Tom Dubose, Leonard Dunn, Wright Dunn, and Grover Dunn, were on the gallery of the store belonging to the father of deceased. J. C. Falvey (a brother of deceased) was interested in the store in some way, perhaps as clerk. Appellant had

been in Falvey's store for the purpose of purchasing some nails. Failing to find what he wanted, he left, went to his horse, hitched about the street of the little town, mounted him and rode by the store, going in the direction of another store, for the purpose of purchasing the nails. Grover Dunn testified that as appellant passed, Tom Dubose gave a derisive whistle. Under his testimony he was the only party whistling at defendant and his horse. Tom Dubose, Leonard Dunn, and Wright Dunn testified that Tom Dubose and deceased whistled. There had been previous trouble between deceased and appellant. Two personal troubles are mentioned by the witnesses. The testimony makes it certain that appellant was the subject of derision and practical jokes of one or more of these young men; that he was not very bright intellectually; that they made him the subject of their derision on several occasions, until it had become irritating and annoying to him. That shortly after appellant passed Falvey's store, going in the direction of the store of Weeks & Powell, these young men left Falvey's store, and went to where appellant was. En route they were heard to say, "Let's go over there; we aren't afraid of him." Coyle saw these boys en route, and requested them not to go over there and raise any trouble or have any trouble. However, they went; and appellant says that they came over there, singing and laughing at him. Just after they entered the store of Weeks & Powell, appellant called deceased out on the gallery, and asked why he was whistling and laughing, and making fun of him and his horse. Deceased denied that he was the party who had whistled at defendant and his horse as he passed Falvey's store. From this point forward the testimony varies as to the immediate subsequent acts and words. The State proved that when deceased denied he whistled at appellant and his horse, appellant called him a damn liar. Deceased reiterated in similar language. Appellant jerked or got out his knife, and deceased grabbed the board, variously described, but it was of sufficient size and dimensions to inflict a serious blow. At this point J. C. Falvey (brother of deceased) took the board away from deceased, and he then got another board to use in the difficulty, when appellant inflicted one blow with a pocket knife, which terminated fatally. Appellant's theory of the trouble, as shown by the testimony, is that appellant called deceased out for the purpose of settling the matter amicably, and that when he asked him why he had used his insulting whistle and other conduct towards him, deceased said he had not done so. Appellant insisted that he had. He then called appellant a liar, or a damn liar, and grabbed a board and struck him with it on the hip. That J. C. Falvey then interfered, and deceased kicked a board from a box sitting on the gallery, grabbed that, and as appellant was turning to go away, deceased ran in front of him with it, and was about to strike him again, when he jerked his knife from his pocket, and struck one blow; that J. C. Falvey then expostulated with them, whereupon he ceased and went away. The only description of the knife given is:

"It was an old knife, with one handle nearly off, you could just throw it open and shut. It would stand open if you would hold it straight, but if you held it the least bit slanting, it would fall shut. The back spring was broken." This is the only description given in this record of the knife which was used by appellant, and with this he inflicted one stab.

Various and sundry exceptions are reserved to the charge of the court. The charge limits the right of self-defense with provoking the difficulty. Under this state of facts it is seriously questionable whether or not this issue was in the case. Perhaps it may have been brought within this rule by the State's testimony under the decision of Polk v. State, 30 Texas Crim. App., 657. Concede that it was, then it was clearly incumbent upon the court to charge the converse of it, because the evidence more cogently shows that the difficulty was brought on by deceased and not by appellant. This question was admirably elucidated in Shannon v. State, 35 Texas Crim. Rep., 2. Appellant unquestionably had the right in a peaceable manner to arm himself and to seek a meeting with the party who had insulted him, on a peaceful mission to endeavor to settle the troubles between them; and if deceased made an attack upon him or provoked a difficulty, the further right to defend himself; but in this case appellant did not arm himself. It was a casual meeting, so far as the record shows; and from the standpoint of appellant, and perhaps from the record, an unnecessary insult on the part of the young men, one of whom was deceased. They evidently followed him from the store of Falvey to the store of Weeks & Powell. It was shown that deceased was of a quarrelsome nature. Special charges were asked covering appellant's side of this question, which were erroneously refused. The court charged the jury: "In passing on the question as to whether or not defendant is justifiable, the facts and circumstances must be viewed from the standpoint of the defendant. Defendant would not be justified in killing deceased, because deceased had followed him, or because deceased had whistled at defendant's horse. The only act that would justify defendant in killing deceased would be such acts upon the part of the deceased, or words coupled with his acts, as were reasonably calculated to produce in the mind of the defendant a reasonable expectation or fear of death or serious bodily injury." Exception was reserved to this charge, as being argumentative, and on the weight of the testimony. This was singling out the fact that deceased followed accused, and had whistled at him and his horse; and charged upon the weight and effect of those two facts. This the court should not have done. While these facts may not have justified appellant in taking the life of his adversary, however, they were but two of the facts mentioned in connection with it which led up to the main facts of the trouble, which occurred on the gallery. By this line of reasoning, the charge may have and doubtless did impress the jury with the idea that the court believed these were the only facts in the case relied upon by

appellant; and in fact practically limited the consideration of the right of self-defense to those two facts. It is not the province of the court to charge on the weight of the testimony. The jury are the exclusive judges of the credibility of the witnesses, and the weight to be given their testimony. The statute expressly prohibits the court from giving a charge on the weight of testimony.

As before stated, appellant requested the court to submit the issue that if deceased provoked the difficulty at Weeks' store, and that appellant believed from the acts and declarations of deceased, that it was his purpose to provoke a difficulty, and do him serious bodily harm, and that while deceased was in the act of inflicting serious bodily injury or was about to inflict serious bodily injury upon appellant, he (appellant) had the right to resist, and if under those circumstances, he killed, defendant would not be guilty. Again, special instruction was requested, to the effect that if the jury should find from the evidence that deceased followed appellant from Falvey's store, to Weeks' store, for the purpose of provoking a difficulty with him, and in pursuance of such design, deceased not in the act of defending himself, procured a piece of plank and struck defendant, and that defendant then cut and killed Falvey, believing at the time he was in danger of serious bodily injury from Falvey, he would be entitled to an acquittal. These charges were refused. They should have been given.

Exception is reserved to the charge because articles 717 and 719 of the Penal Code, were not given in the charge to the jury. Article 717 reads as follows: "The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." Article 719, provides: "Where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide, unless it appear that there was an intention to kill, but the party from whose act the death resulted may be prosecuted for and convicted of any grade of assault and battery." There is no evidence showing that the knife was a deadly weapon. The only fact from which that inference can be gathered is the "bare" fact that the wound inflicted by the knife did produce death. It has never been held, so far as we are aware that because death resulted, therefore the weapon is necessarily a deadly weapon. The weapon is not necessarily a deadly weapon. The weapon is described as an old knife, with one handle nearly off; you could just throw it open and shut. It would stand open if you held it straight, but if you held it the least bit slanting it would fall shut. The back spring was broken. There is enough evidence to indicate it was a pocket knife, for defendant got it out of his pocket. Pocket knives are not per se deadly weapons. They may or may not be deadly weapons. Where

a weapon is not necessarily a deadly weapon, then we may look to the manner of its use along with all the facts in order to ascertain the intent with which it is used. If it is not ordinarily a deadly weapon, then, in order to find homicide, the intent to kill must evidently appear from the manner of its use. Shaw v. State, 34 Texas Crim. Rep., 435. Here sudden trouble came up between the boys in regard to the insulting conduct of deceased towards appellant. It seems to be rather clear and certain that a deadly conflict was not contemplated. Appellant's intention, as he expresses it, was simply to ask for an amicable settlement of the trouble and a cessation of the insults. He had not armed himself for any deadly conflict; simply had an old broken handled pocket knife, and resisted from his standpoint 'the attack made upon him, with the plank. He only used the knife after being struck, and only inflicted one wound, which proved to be fatal. We do not believe the evidence warrants the court in taking the facts from the jury. It should have been submitted to the jury as a question to be decided. As bearing out this view of the law, see Nichols v. State, 24 Texas Crim. App., 137; Martinez v. State, 35 Texas Crim. Rep., 386. Under the very terms of the statute, before the court would be authorized to refuse an instruction under article 717, supra, the testimony must make it *evident* that the party intended to kill. The facts here do not warrant the trial court in solving this question adversely to appellant. The charge should have been given under this statute.

It is not necessary to discuss the conduct of the jury as it will not arise upon another trial.

For the errors discussed the motion for rehearing is granted, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, dissents.