## GEORGE HANNERS V. THE STATE.

No. 10985.   Delivered November 9, 1927.

Rehearing denied December 14, 1927.

1.—Manslaughter—Charge of Court—On Character of Weapon—Erroneously Omitted. .

Where, on a trial for manslaughter, the weapon used in the infliction . of the wound being shown to be a small pocket knife, and there being no evidence that such knife in the manner of its use was a deadly weapon, the court should have charged the law under Art. 1261, P. C. 1925, and the court's charge in effect that the jury must believe that the assault was made by appellant with the specific intent to kill was not sufficient. See Art. 1261 of the P. C.

2.—Same—Continued.

"In instances in which, under the evidence, the instrument used in producing the homicide was not a deadly weapon, per se, or in which there was an issue upon that point, the court has uniformly held that upon appellant's request his theory of an absence of intent to kill should be put before the jury in a manner clearly informing them as to the law." Following Hoover v. State, 37 Tex. Crim. Rep. 372, and other cases cited.

3.—Charge of Court—On Manslaughter—Insufficient.

The evidence raising the issue that the homicide occurred under the influence of sudden passion and that the knife used to inflict the wound which resulted in the death of deceased, was not in its nature calculated to produce death, and that there was no intention to kill, it was error for the court to fail to charge Art. 1263, P. C., in connection with this charge on manslaughter.   See Mason v. State, 255 S. W. 986.

4.—Same— Charge of Court — Defining Deadly Weapon — Erroneously Omitted.

Where the weapon used may or may not be deadly in character it becomes the duty of the trial court to define a deadly weapon, and unless the deadly character of the weapon is shown beyond question, the failure to so define is reversible error.   See Tolston v. State, 225 S. W. 1098, and authorities cited.

### ON REHEARING.

5.—Same—Evidence—Properly Admitted.

Appellant not satisfied with our opinion reversing this case makes complaint on a motion for rehearing that we failed to pass on two of his bills of exception.

6.—Same—Continued.

It is a well settled rule of evidence in this state that the state may always prove that the deceased was unarmed at the time of the homicide. The proof may be made either by direct testimony or inferentially by testimony showing that there were no arms about the body of the deceased after he was killed, or that he had left his weapons at another place, and there was no error in admitting such proof in this case.

Appeal from the District Court of Wilbarger County on a change of venue from Hardeman County. Tried below before the Hon. Robert Cole, Judge.

Appeal from a conviction for manslaughter, penalty five years in the penitentiary.

This is a second appeal of this case. The first appeal is reported in 284 S. W. 554.

*Fires & Williams* of Childress, for appellant.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is manslaughter, the punishment confinement in the penitentiary for five years.

This is the second appeal of this cause, the same having formerly been tried in the District Court of Hardin County, wherein appellant was convicted of the offense of murder. On appeal from said conviction, the cause was reversed by this court, as appears from the opinion in 284 S. W. 554.

Appellant lodged an exception to the court's charge as follows:

"The charge as a whole is error because of the failure to give Art. 1261, P. C., the evidence showing that the injury inflicted by the defendant was done with a knife, and there is no evidence offered as to the size or character of the knife, or that the same was a deadly weapon, per se; there is no other evidence to show any intent to kill other than the bare fact that the wound that was inflicted produced death."

Art. 1261, P. C., provides:

"The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the defendant; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears."

It appears that the court omitted from the charge the article above quoted and that in no part of the charge was said article given application. On the issue of manslaughter, in applying the law to the facts, the court charged the jury as follows:

"Now if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, George Hanner, in a sudden passion, aroused by adequate cause, as the same has herein before been explained, and not in self defense, did kill the said Wesley Taylor by cutting him with a knife with the intent then

and there to kill the said Wesley Taylor, as alleged in the indictment, then you will find the said defendant guilty of manslaughter and assess his punishment at confinement in the state penitentiary for a term of not less than two nor more than five years. But if you do not so believe from the evidence in this case, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of manslaughter."

It is contended by appellant that in the absence of a description of the knife used by him in inflicting the wound that resulted in the death of deceased, it became necessary for the court to give the provisions of Art. 1261, supra, in his charge. Briefly, the record discloses that appellant, the deceased, and several other parties were engaged in gambling; that appellant and deceased had a dispute over a bet and that deceased called appellant a s—— of a b——; that appellant demurred and requested deceased not to apply such epithets to him; that the dispute was settled and the parties continued to gamble; that shortly afterwards appellant and deceased had a second dispute over a bet, which was also amicably arranged; that a third dispute arose between appellant and deceased during which time deceased again applied to appellant the epithet he had theretofore used; that appellant and deceased walked toward each other, both cursing; that just prior to the cutting of deceased by appellant the left hand of deceased flew up, and that immediately thereafter appellant struck deceased three blows with a pocket knife, inflicting three wounds, from one of which deceased thereafter died; that the knife used by appellant was an ordinary small pocket knife. Appellant's theory was, as disclosed by the testimony, that deceased threatened him and that he cut deceased in an effort to defend himself. All of appellant's witnesses and practically all of the witnesses for the state testified to the effect that deceased cursed and abused appellant and threatened to kill him. The testimony of appellant's witnesses shows that the deceased ran his hand in his bosom and threatened to shoot appellant immediately before appellant cut the deceased. The record further discloses that immediately after the fatal blow was struck, appellant said: "I hurt him; I just as soon hit a brother."

It is seen that no description of the knife used by appellant was given other than that it was an ordinary small pocket knife. It is true that the record shows that the wound from which deceased died penetrated the liver and severed the cartilage forming the connection between the eleventh and twelfth ribs. This is the only evidence in the record from which the jury

might have inferred that the intention to kill evidently appeared. If it is shown that the weapon is per se deadly the law presumes the intent to kill; but if the weapon is not per se deadly the intent to kill is a question of fact to be determined, under the statute, from the manner in which the weapon was used, and in such case it must evidently appear from the manner and use of such weapon that there was an intent to kill. While the court in his charge on manslaughter instructed the jury that they must find that appellant intended to kill the deceased before they could find him guilty of the offense of manslaughter, a guide for the determination of the question of the intention to kill was entirely omitted from the charge. The question of the intention of appellant to kill the deceased being a controverted issue and there being nothing in the record to show that the knife used by appellant was per se a deadly weapon it was the province of the jury to determine whether the fatal blow was struck by appellant with the intention to kill deceased. In the case of Hoover v. State, 87 Tex. Crim. Rep. 372, this court said:

"In instances in which, under the evidence, the instrument used in producing the homicide was not a deadly weapon, or in which there was an issue upon that point, this court with marked uniformity has held that upon appellant's request, his theory of an absence of intent to kill should be put before the jury in a manner clearly informing them as to the law."

In the case of East v. State, 296 S. W. 883, this court said:

"There is nothing in the record showing the deadly character of the knife used by appellant, and this being true, he is entitled to have the question of intent presented as an issue to the jury." Citing Griffin v. State, 50 S. W. 366.

In the case of Garrett v. State, 198 S. W. 308, the testimony showed that the weapon used by appellant was a razor and that the wound inflicted was serious and dangerous. In submitting a charge on assault with intent to murder, the court said:

"If from the evidence you are satisfied beyond a reasonable doubt that the defendant, Mary Garrett * * * * with a deadly weapon and with malice aforethought, did assault the said Alberta Johnson with the intent then and there to kill and murder her by the means charged in the indictment * * * *, then you will find the defendant guilty of an assault with the intent to murder * * * *. Before you convict the defendant in this case of assault with intent to murder you must find beyond a reasonable doubt (1) that the defendant cut the said

Alberta Johnson; (2) that she did so with the specific intent of killing said Alberta Johnson * * * *."

Appellant objected to this charge on the ground that the court failed to charge Arts. 1147 and 1149, P. C., now Arts. 1261 and 1263, P. C. 1925. The majority of the court held that the failure of the court to charge these articles constituted reversible error. It is noted that the court instructed the jury in the charge immediately hereinbefore quoted among other things, that before they could find the appellant guilty they must find that she had the specific intent of killing the injured party. Notwithstanding the fact that the intent to kill was submitted to the jury in the language quoted, this court held that error resulted from the failure to charge the provisions of Art. 1147, P. C., now Art. 1261, P. C. 1925. See Craiger v. State, 88 S. W. 208.

We are constrained to hold that under the facts of this case, the court in failing to embody in the charge an instruction covering the provisions of Art. 1261, P. C., which was in effect at the time, withheld from the consideration of the jury a guide by which they could determine whether the intent to kill was present in appellant's mind at the time he struck the fatal blow.

Timely exception was taken by appellant to the failure of the court to give in connection with the charge on manslaughter an instruction covering the provisions of Art. 1263, P. C., which said article was in effect at the time of the trial. Art. 1263, P. C., provides:

"Where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide unless it appears that there was an intention to kill, but the party from whose act the death resulted may be prosecuted for and convicted of any grade of assault and battery."

Paragraph 11 of the court's charge reads as follows:

"If, under the foregoing instructions, you acquit the defendant of the offense of murder and of manslaughter you will next consider whether or not he is guilty of aggravated assault.

Immediately succeeding the above quoted instruction are paragraphs submitting the law of aggravated assault.

The provisions of Art. 1263 were not given application in connection with the charge on manslaughter, and were entirely omitted from the charge as a whole. While in the charge on aggravated assault, the court instructed the jury, in substance, that if they had a reasonable doubt that the knife used from the manner and mode of its use was a deadly weapon the

offense would be aggravated assault, the difficulty is that paragraph eleven of the court's charge, in effect, advised the jury that the antecedent instructions should govern them in determining whether the offense was manslaughter. The evidence raising the issue that the homicide occurred under the influence of sudden passion, and that the knife used to inflict the wound which resulted in the death of deceased was not in its nature calculated to produce death, and that there was no intention to kill, it was error to fail to charge Art. 1263, supra, in connection with the charge on manslaughter. Not only should the article have been given in the charge, but pointed application of its provisions should have been made to the facts of the case. See Mason v. State, 255 S. W. 986.

Appellant contends that the court erred in failing to embody in the charge a definition of what constituted a deadly weapon. We must sustain appellant's contention. When the weapon used may or may not be deadly in character, it becomes the duty of the trial court to define what is a deadly weapon; and unless the deadly character of the weapon is shown beyond question the failure to so define same is reversible error. See Tolston v. State, 225 S. W. 1098, and authorities cited.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant is not satisfied with our opinion reversing this case, and makes complaint that we failed to pass on two of his bills of exception. Said bills substantially presented objection to proof that two pistols belonging to deceased were left by him at his home when he left shortly before the homicide; also proof of the fact that when the body of deceased was undressed and searched at the hospital to which it was carried after the homicide, no pistol or weapon was found thereon. We do not believe error was committed in either particular. Many authorities are cited by Mr. Branch in his Annotated P. C., under Sec. 1931, supporting the proposition that the state may always prove that the deceased was unarmed at the time of the homicide. See Seeley v. State, 43 Tex. Crim Rep.

69; Thomas v. State, 45 Tex. Crim. Rep. 114; Dougherty v. State, 59 Tex. Crim. Rep. 469. If the state might prove this fact directly by positive testimony of witnesses, it might prove the same inferentially by testimony which showed that there were no arms about the body of deceased after he was killed, or that he had left his weapons at another place. An objection to such testimony would go more to its weight than to its admissibility.

Appellant's motion for rehearing will be overruled.

*Overruled.*