## B. H. HUNTSMAN V. THE STATE.

No. 21046. Delivered May 8, 1940.
Rehearing Denied October 16, 1940.

64

The opinion states the case.

*Willis & Via,* of Pampa, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of an assault to murder with malice upon Fred Keehn, and given a penalty of three years in the penitentiary.

The State's testimony showed that appellant was a tenant in a hotel belonging to the injured party, and had fallen behind in the payment of the rent for his rooms in such hotel. That the prosecuting witness had removed appellant's belongings from the room occupied by appellant and had locked such belongings up in another room, holding them until appellant paid his bill, the witness claiming that the hotel law gave him such powers. On the night of the difficulty Mr. Keehn had gone into a cafe and ordered a meal and same was served to him at a counter where stools with removable seats were used for patrons to sit on. While the prosecuting witness was seated and eating his meal appellant came into the cafe, and upon perceiving the complaining witness appellant lifted the moveable seat off one of these stools and made a striking downward motion, and although no one saw this stool strike Mr. Keehn, evidently the same did strike him upon the head, the doctor testifying that he was suffering from a concussion of the brain soon after the difficulty. The two men then began fighting and soon passed through the outer door of the cafe into a street of the city of Pampa, where this trouble occurred. Witnesses

outside of the cafe then say they saw appellant draw a white handled knife from his pocket, and this fight proceeded along and among some parked cars on the street, eventually winding up some short distance down the street with the witness Keehn on top of appellant, and appellant with a white handled knife in his left hand. Mr. Keehn was cut in his body and on his face eleven or twelve times, some of the wounds being dangerous ones. The attending physician thus described Keehn's wounds: "When I first saw him he was in a state of very severe shock, with the following injuries: Wound on his left anterior chest, just below the nipple line, deep wound; deep wound in left axillary, running from about the middle down to about tenth or eleventh rib; and just behind the axillary and below the last rib there was a deep horizontal cut; two superficial cuts on left arm; one below left shoulder, and one on top of shoulder extending to the neck; one in the back on left hand side, and one below that on left side at about the tenth rib; there was on the right side, on the anterior axillary line, about the location of the tenth rib, another wound which pierced the lung and diaphragm on that side, causing collapse of the lung. The wound on the left side just below the twelfth rib punctured the intestine, the large descending intestine, causing a subsequent peritonitis. There was a wound beginning at the angle of the mouth, extending to the back part of this muscle in the neck; another wound on top, on left side, extending from the temple clear on back to the nap of the neck; the left ear was almost severed, with numerous cuts in the helix, in the main part of the ear. That was about the extent of the injuries; he was also suffering from concussion, which is a state of the brain, and he was a little addled. I would say that the majority of these wounds were rather deep; one of them pierced the lung, and another pierced the abdominal cavity, through the diaphragm and punctured one of the intestines. There were eleven or twelve cuts in all. Most of the wounds on the left side seemed to be going toward the mid-line of the body,—going in, and down. He was given about five transfusions all together."

We think from this testimony the jury was justified in saying that appellant cut the complaining witness with a knife, the blade of which was described as from two and one half to three inches in length. There was also some testimony relative to threats upon the part of appellant towards the injured party a short time before the difficulty.

Appellant's defense was self-defense, and the fact that he

was so injured and addled by strokes on his body by Keehn that he had no recollection of cutting Keehn; that as he passed through the outer door of the cafe, fighting with Keehn, appellant's head struck the door and he only returned to full consciousness when he was found on the ground with Keehn on top of him. He denied that the knife exhibited at the trial, and identified by witnesses as being taken from his hand, was his knife.

There are no bills of exception taken as to the testimony, but there are twenty-two bills of exceptions taken to the trial court's refusal to give certain special charges to the jury.

The first proposition in appellant's brief relates to the 21st requested charge and is directed at the following paragraph of the court's charge:

"Now bearing in mind the foregoing definitions and instruction, if from the evidence you believe beyond a reasonable doubt that the defendant, B. H. Huntsman, on or about the 27th day of August, 1939, in the county of Gray and State of Texas, with a deadly weapon, to-wit, a knife, and with malice aforethought, as that term has hereinbefore been defined to you, did assault the said Fred Keehn, with the specific intent then and there to kill him, the said Fred Keehn, you will find the defendant guilty of an assault to murder with malice aforethought, and assess his punishment at confinement in the penitentiary for a term of not less than two nor more than fifteen years; but unless you do so find and believe from the evidence beyond a reasonable doubt, you will acquit him of assault to murder with malice aforethought; but if, from the evidence, you believe beyond a reasonable doubt that the defendant Huntsman, on or about the 27th day of August, 1939, in the county of Gray and State of Texas, with a deadly weapon, to-wit, a knife, and without malice aforethought, as that term has been hereinbefore defined to you, did assault the said Fred Keehn, with the specific intent then and there to kill him, the said Fred Keehn, then you will find the defendant guilty of assault to murder without malice, and so say by your verdict, and assess his punishment at confinement in the penitentiary for a term of not less than one nor more than three years; but unless you do so find and believe from the evidence beyond a reasonable doubt, you will acquit him of assault to murder without malice."

The main objection to said charge is because the same omits to use the phrase "and not in his own necessary self-defense,"

or one of like import, in each instance where it deals with murder with malice and with murder without malice. We do observe, however, that the trial court, in more than a page of his charge to the jury, gave a full and complete charge on self-defense, and applied the law to the facts. He covered real danger and apparent danger. Again, relative to appellant's standpoint, he instructed the jury that they must view this matter as it reasonably appeared to appellant at the time, and in fact gave a very comprehensive charge relative to self-defense, and finally instructed the jury to acquit appellant if they believed or had a reasonable doubt thereof that the appellant believed his theory of self-defense. We think the charge must be taken as a whole, and viewed from its four corners; that it is neither feasible nor proper to combine all its constituent elements in one paragraph, and we feel sure that the jury could and did the more easily understand the matter when such charge is divided into its different paragraphs; and that they surely understood that if this appellant cut Keehn in his own necessary self-defense, then it was their duty to acquit him, regardless of whether such statement relative to self-defense was incorporated in each and every phase of the case charged upon, or embodied in one comprehensive paragraph charging the law of self-defense. We do not think such charge subject to the criticism leveled thereat, nor do we think the cases cited to us hereunder to be in point.

Appellant's second proposition of error complains because of the following portion of the trial court's charge: "Now if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, with a deadly weapon, did make an assault upon Fred Keehn, but you further believe from the evidence, or have a reasonable doubt thereof, that at such time the said Fred Keehn was making or was about to make what appeared to him, the defendant, as viewed from his standpoint at the time, an unlawful attack upon him, the defendant," etc., the point being urged that such charge placed the burden of proof upon the defendant to establish beyond a reasonable doubt that he first assaulted Keehn before he would have the benefit of his right of self-defense. We think that although all persons are surely possessed of the right of exercising the right of self-defense, a charge on such right does not become material unless some act is done that is claimed to have been done under the sanction of such right. It is one of defense, and unless an accused has done some affirmative act under the claim of self-defense, it would be idle to charge the jury on such a right. Had appellant done nothing at all in the transaction,

there would have been no case in which he could have pleaded his defensive right. There must first be an offense before there can be a defense. We do not think this proposition evidences error.

Appellant's third proposition complains because therein it is said that the trial court erred in his charge to the jury in that it required the jury to view all the circumstances of this case from the jury's standpoint rather than that of the defendant. We do not think the charge subject to such a criticism. It told the jury in so many words that they must view the transaction from the defendant's standpoint, and arrive at their conclusion as such facts reasonably appeared to appellant at the time and from his standpoint alone.

The fourth proposition presented relates to the trial court's refusal to give a peremptory instruction to the jury to find appellant not guilty. From what we have said in the beginning of this opinion relative to the State's testimony it is shown that such an instruction should not have been given.

Appellant's first proposition, when sifted down to its last analysis, seems to be based upon the court's refusal to embody in its charge a specific instruction that an intent to kill must have been had by appellant at the time of the assault, and not an intent to maim, or to commit some other offense. The careful trial court did instruct the jury relative to an assault to murder both with and without malice; that such a specific intent had to be present, but said nothing about any other intent such as an intent to maim. The court is required to instruct the jury on the different phases that arise by reason of the indictment and the facts, and we do not think that the facts demanded a charge on any assault with intent to maim or commit any further offense than to destroy life, or do serious bodily injury, and the trial court would not have been justified in charging on any other intent in such assault.

Appellant's sixth proposition complains because the trial court failed to charge the jury that if at the time the defendant made the assault upon the injured party he was incapable of cool reflection because of certain conditions of his mind, etc., then they could only convict him of an assault to murder without malice. The testimony upon which this charge was claimed to be based came from the defendant, and was to the effect that he was partially unconscious because of having bumped into a door with his head at the beginning of the difficulty, and that he merely had flashes of consciousness from time to time, and did not know what was going on and did not know whether he cut Keehn or not. We think the trial court met this situation

as testified to by appellant in the following charge: "You are further instructed that if you believe from the evidence that the defendant Huntsman cut the said Fred Keehn with a knife, but that at the time he cut him, if he did cut him, he was in such state of mind, from any cause, that he did not know or realize what he was doing, or if you have a reasonable doubt as to whether he knew and realized what he was doing, you will acquit the defendant and say by your verdict not guilty."

We think the seventh proposition of error presented by appellant was met by the court's charge. To write thereon would unnecessarily lengthen this opinion.

We have carefully gone over each and every requested charge not given, and not here written upon, and where the same were pertinent we find that the court has embodied them in the charge read to the jury. The ones not given nor embodied in such charge and not here written upon, in our opinion, should not have been given. The court in addition to the main charge gave four of the requested charges and refused twenty-two thereof. The charges thus given seem to us to be a fair presentation of the law as applied to the facts, and all assignments based on such refused charges not herein treated are expressly overruled.

The judgment is affirmed.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant has filed a motion for rehearing in this cause in which he insists that this court review the authorities cited on page two of his brief. The original opinion properly disposes of these authorities by saying that they are not pertinent. We have re-examined them and adhere to the original conclusion.

Further complaint on motion for rehearing is found in the contention that this court in its original opinion did not have evidence to justify its conclusion that the jury was warranted in finding that appellant intended to take his life when he cut the complaining witness with a knife. In addition to the evidence on this subject as copied in the opinion, Dr. Johnson said: "I would say that the knife here exhibited to me is an instrument capable of causing death." Considered with the nature and number of the wounds, the jury was justified in finding as a fact that appellant intended to take the life of Keehn. When the weapon used is a deadly weapon per se, the intention will be presumed. When the instrument is shown to be a deadly weapon and the facts and circumstances will justify,

the jury may so find, and this finding is presumed from the verdict of guilt; Butler v. State, 100 S. W. (2d) 707; Govan v. State, 20 S. W. (2d) 1049; Hanners v. State, 300 S. W. 71; Studdard v. State, 14 S. W. (2d) 69; Scroggins v. State, 45 S. W. (2d) 983; Hawkins v. State, 29 S. W. (2d) 382; Branch's Annotated Penal Code, Section 1638 and 1639.

Believing that the proper conclusion was reached in the original opinion, the motion for rehearing is overruled.