R. W. GRIFFIN V. THE STATE.

No. 23405. Delivered November 13, 1946.
Rehearing Denied January 8, 1947.

28

*Crenshaw, Dupree & Milam,* of Lubbock, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for the offense of murder. The punishment assessed is confinement in the state penitentiary for a term of five years.

Appellant brings forward a number of complaints, each of which he claims presents reversible error.

His first contention is that the evidence is wholly insufficient to sustain his conviction of the offense of murder. With this contention we are unable to agree. The record shows that appellant and several other parties assembled at the home of Walt Edwards for the purpose of engaging in a game of poker. Some

whisky was carried there, and they seem to have indulged in playing and drinking for about three hours, when a controversy arose between appellant and deceased over the amount of money which deceased claimed was due him out of the "pot" because he had put therein his check for the sum of $10.00. Appellant, who had won the pot, offered him the check, but deceased insisted on having the difference of $4.50 in cash and not the check. This led to some harsh words directed by deceased towards appellant. It seems that at this juncture both parties arose from their chair. The deceased placed his hands on his chair while appellant picked up a quart, or rather a four-fifths quart bottle, about half full of whisky, and struck the deceased on the side of the head with such force that the bottle broke and spattered whisky and glass over the floor and on some of the participants in the game. This incident caused the parties to cease their game and soon all had left the home of Edwards. However, before they left, some of them inquired of the deceased if he was hurt; and if so, they would take him to a doctor, but he said that he was not hurt and did not want to go to a doctor. Later, Edwards and deceased rode out in the country some six or seven miles in Edwards' automobile, but on their return trip, Edwards drove the car into a ditch on the side of the road and bogged down. Edwards and deceased both got out of the car, but soon realized that they would not be able to extricate the car from the ditch without the aid of a tractor or wrecker. Edwards suggested to the deceased that he remain at the car while he went to procure some one with a tractor to pull the car out. When Edwards returned, after being gone for about forty minutes, the deceased was gone. Edwards concluded that deceased had caught a ride to town in a passing car and made no effort to locate him. After his car had been pulled out of the bog, he immediately drove home. The next day the body of the deceased was found in the ditch something like 40 or 50 feet from the place where Edwards' car had bogged down on the preceding day. An autopsy was performed on the deceased by Dr. McGuire which revealed the fact that quite a large clot of blood had formed on the brain due to a rupture of a blood vessel which caused death.

The intent with which a person does an act can only be determined from his words, acts and conduct at the time. Consequently, the question of the intent of the offending party becomes a question of fact to be determined by the jury under an appropriate instruction from the court. The jury have a right to consider the instrument or means used, the seriousness of the injury inflicted, and the result thereof in arriving at the

intent. In the instant case, the jury heard the evidence relative to the instrument or means used, the manner in which it was used, the injury inflicted, and the result thereof. Whether or not the bottle, in the manner of its use, was an instrument calculated or likely to produce death was a question for the jury to determine and which, together with the injury inflicted and the result thereof, were facts and circumstances from which the jury were authorized to ascertain his intent. See Ammann v. State, 165 S. W. (2d) 744.

Appellant insists that no previous ill feeling existed between the parties. That may be true, but the evidence discloses that ill feeling arose at the time of the difficulty. It was not absolutely necessary, in order to sustain a conviction of murder, that there be evidence of previous ill-will of long standing.

Appellant cites us to the case of Watson v. State, 189 S. W. (2d) 1020, as well as other cases, in support of his contention. In the Watson case, the accused merely struck the deceased with his fist and knocked him down, from the effects of which the injured party lapsed into unconsciousness and died of a concussion of the brain. In that case the accused merely used his fist to strike with, which is not such an instrument or means as was calculated or likely to produce death from the manner of its use, and having denied his intent to kill, this court held the evidence insufficient to sustain the conviction for murder. But such is not the case here. In the instant case, appellant used a quart bottle half full of whisky. He struck the deceased with such force that the bottle broke into fragments and knocked him down. He then grabbed a pint bottle and struck deceased again. Thus, it will be noted that we have quite a different state of facts from those in the Watson case, supra. We do not deem it necessary to attempt to distinguish between the other cases cited by appellant and the instant case, as the distinction observed in the Watson case and the present one will suffice to note the distinction between the other cases and the one under consideration.

Appellant next contends that the evidence shows that he acted in self-defense when he struck the deceased and that therefore his conviction is not justified. It was an issue of fact whether he struck in self-defense, and this issue the jury also decided adversely to him, and this court would not be justified, under the evidence as disclosed by the record, in disturbing the conclusion of the jury.

Appellant also complains of the admission in evidence of certain photographs which had been taken after an autopsy had been performed. These photographs, according to the testimony of the doctor, correctly and accurately portrayed the injuries inflicted upon the deceased. They disclosed the brain, the ruptured blood vessel, and the clot of blood on the brain. To the introduction in evidence of these photographs, appellant objected on the ground that they served no useful purpose, that they were immaterial, irrelevant, inflammatory and prejudicial. While it is true that the doctor testified to what he discovered as a result of the autopsy, yet it was in part in technical language which is not always fully understood by the average layman. Furthermore, the doctor was subjected to a most searching cross-examination, which created the impression that appellant doubted the correctness of his opinion and his efficiency as a medical expert. These photographs were admitted in evidence in connection with the doctor's testimony showing the condition of the brain after the removal of the skull. The identical question here presented was before this court in the case of Monson v. State, 63 S. W. 647, and decided adversely to appellant's contention. To the same effect are the decisions of courts of other jurisdictions. See Commonwealth v. Winter, 289 Pa. 284; State v. Gaines, 258 Pac. 508; Savary v. State, 87 N. W. 34. Having reached the conclusion that no error was committed in the admission of the photographs in evidence, his contention is overruled.

Appellant in due time objected to every paragraph of the court's charge. To discuss each objection would extend this opinion at great length and serve no useful purpose. Therefore, we shall confine ourselves to a discussion of such questions as are presented in his brief and oral argument.

His first complaint relates to the court's charge on the law of murder with malice, but since the jury found appellant guilty of murder without malice, the question relative to the charge of murder with malice passes out of the case. Consequently we need not express any opinion thereon.

His next complaint relates to the court's charge on the law applicable to murder without malice which reads as follows:

"If you find and believe from the evidence, beyond a reasonable doubt, that the defendant so committed said homicide as charged, if any, and you further find and believe from the evidence that the defendant had no malice aforethought in his mind, but on the contrary, his mind was incapable of cool re-

flection on account of sudden passion arising from terror, fear, excitement, anger, resentment, or any other cause, and that if under such mental condition defendant's mind was incapable of cool reflection, or if you have a reasonable doubt that he was so prompted, or did so act with his malice aforethought, then you will assess defendant's punishment at confinement in the penitentiary for not less than two nor more than five years; but if you have a reasonable doubt of the defendant's guilt of murder, you will acquit him of that offense."

His objection was that the court failed to include in said charge the following, "and not in self-defense." Where the court gives a charge on the law of self-defense and applies the law to the facts in the case, we do not believe it to be necessary, in charging on the law of murder with and without malice, to include therein the qualifying phrase, "and not in the defense of himself", etc. Such has been the holding of this court in the case of Huntsman v. State, 143 S. W. (2d) 587.

The trial court in paragraph 10 of his charge, giving effect to Art. 1224, P. C., instructed as follows:

"With further reference to the law of self-defense as applicable to murder and to assault with intent to murder, you are charged that homicide is justifiable also in the protection of the person of one against whom any other unlawful and violent attack besides those mentioned is made and in such cases all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack. The party whose person is so unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant.

"Now, therefore, you are instructed that if you find and believe from the evidence in this case, or have a reasonable doubt thereof, that at the time of, or just prior to the transaction in question, the deceased had made or was in the act of making an unlawful and violent attack upon the defendant and that such attack, if any, did not create in the mind of the defendant a reasonable apprehension or fear of death or serious bodily injury, still, the defendant would have a right to defend himself against such unlawful and violent attack and to kill the deceased, if he did, provided all other means were resorted to by the defendant for the prevention of the injury save retreat, and provided further that the killing, if any, took place while the deceased was in the very act of making an unlawful and violent attack upon the defendant, and in case you so find or

have a reasonable doubt thereof, you will acquit the defendant.

We observe here that substantially the same instruction was given in the defensive charge as against aggravated assault.

Appellant lodged a number of written objections to paragraph 10, one being that the court should have defined what was meant by the term "all other means." Upon this point appellant cites Prater v. State, 142 Tex. Cr. R. 626, 155 S. W. (2d) 934, and Martinez v. State, 142 Tex. Cr. R. 143, 151 S. W. (2d) 817. In both cases the holding was that accused was entitled to have the provisions of Art. 1224 P. C. submitted. In neither was it announced that it was necessary ordinarily to enlarge upon the statute. Facts might develop in a case where some explanation of the term "all other means" would be appropriate. Such was the situation in Fambro v. State, 142 Tex. Cr. R. 473, 154 S. W. (2d) 840, which is cited in Prater's case (supra). An investigation of the question reveals that in Terrell v. State, 53 Tex. Cr. R. 604, 111 S. W. 152, after holding that the facts did not call for the application of Art. 1224 P. C., it was said as dicta that if said article was charged it should be that "all other reasonable means at hand" must be resorted to. The cases cited in Terrell's case are not thought to support this dicta statement. The following cases either hold directly, or intimate, that a charge in the language of the statute is sufficient. Blake v. State, 3 Tex. Cr. App. 581; Bryant v. State, 47 S. W. 373; Robins v. State, 9 Tex. Cr. R. 666; Taylor v. State, 38 Tex. Cr. R. 552, 43 S. W. 1019; Miller v. State, 27 Tex. Cr. R. 63, 10 S. W. 445. We conclude that ordinarily a charge in the language of the statute is sufficient, and we discover nothing in the facts here present to call for any enlargement thereon.

It occurs to us that the court undertook to give a charge upon every theory of the case as made by the evidence without any limitation of appellant's legal rights, and we think this he received at the hands of the court. In construing a charge, it must be considered as a whole, and not isolated paragraphs thereof. In the instant case the court, in separate paragraphs, charged the law applicable to each phase of the case as made by the evidence. Had the court combined two or more phases of the case in one paragraph, it might have created confusion and have been subject to an objection.

Appellant next complains of the introduction in evidence of his voluntary confession. His objection is based on the ground that it was offered in rebuttal when no predicate had been laid

for his impeachment. We do not think that the defendant has the right to direct the order in which the State introduces its evidence. Hence we overrule his complaint. The State could have introduced it in evidence at the beginning of the development of its case. Then why not at a later time?

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that the facts are insufficient to warrant the jury's finding of a specific intent to kill.

There is no question but that, under our present statute, a specific intent to kill is an essential ingredient of the offense of murder. Miller v. State, 112 Tex. Cr. R. 125, 13 S. W. (2d) 865.

In the instant case, the trial court so recognized and required the jury to so find in order to convict.

Touching the question as to the sufficiency of facts to show a specific intent to kill, in Ammann v. State, supra, we said:

"If the weapon used is not deadly, the intent to kill on the part of the accused may be ascertained from and shown by the surrounding facts and circumstances. If it is possible that death might have been inflicted by the weapon used, and if the accused intended thereby to take life by the use made thereof, the offense of assault with intent to murder is complete, even though the instrument used was not a deadly weapon."

The question there before the court which prompted the rule stated was whether or not the facts showed a specific intent to kill.

The entire record has been again examined in the light of

appellant's contention. We remain convinced that reversible error is not reflected.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.