**Julian HERNANDEZ, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 36182.**

Court of Criminal Appeals of Texas.

Dec. 4, 1963.

Rehearing Denied Jan. 15, 1964.

Second Motion for Rehearing Denied Feb. 26, 1964.

Hill, King & McKeithan, Mission, Gerald Weatherly, Laredo, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

Appellant was tried upon an indictment alleging that he made an assault upon Higinio Gutierrez, Jr., with the intent to mur-

der him. The jury found him guilty as charged and assessed the minimum punishment of one year in the penitentiary.

The evidence, including the testimony of Gutierrez and the testimony and the confession of the appellant, shows that the appellant stabbed Gutierrez with the instrument introduced in evidence.

The instrument is described as a Japanese letter opener. The blade is a bit more than ¼ inch wide at the handle; is 2⅞ inches long and has a sharp point. The sheath is 3¾ inches in length and when the blade is inserted in the sheath the instrument is 6½ inches long.

According to the state's evidence, the appellant who was involved in an argument or difficulty with some other boys, pushed or bumped into Gutierrez as he was reaching into the back of an automobile to get a package of cigarettes. According to appellant's testimony he did not push or bump into Gutierrez.

Gutierrez testified that it was a surprise to him that someone was pushing him and that he pushed him away and told him to "cut it out"; that the appellant attacked him and stabbed him in the left side of the abdomen; that after he was stabbed all he did was "reach out and grab his right wrist with my left hand, and got him by his collar with the right hand, and I pushed him back against another car, I'd say six to eight yards, and I hit his hand on the fender of the car 'til he dropped the weapon, and I saw it was a knife, or rather one of those Japanese letter openers."

Appellant's statement to the sheriff, introduced without objection, and which appellant testified was correct except for the part about his hitting or pushing Gutierrez, contains the following confession:

"My name is Julian Hernandez, Jr., and I am seventeen years old. I was born in San Ignacio, Texas, and I consider San Ignacio my home. On the 17th of August of 1962, I arrived at Villarreal's Place, which is a half mile north of the town of Zapata, Texas. In this place there was a dance going on. We were near where the musicians play and started to play, Refugio Jasso, Jorge and Juan Gonzalez. They pushed me, and I hit that boy, I believe him to be Higinio, and there is where the fight commenced. He threw me down. I got up, and that is when I stabbed him. They took the knife away, but I don't know who. Immediately, I was arrested by a Deputy Sheriff and brought to the Courthouse in Zapata, Texas."

Dr. Cigarroa, physician and surgeon, who treated Gutierrez at Mercy Hospital in Laredo, described his wound as "a penetrating wound of his abdominal cavity * * * in his left lower quarter of the abdomen * * *."

The doctor testified that Gutierrez was administered a general anesthetic and a surgical incision was made into the abdominal wall which was necessary in order to determine the extent of the injury and to attempt to repair it. He testified:

" * * * the instrument or instruments that were used to cause his injury went through the skin, went through the muscle, went through the fat, went through the interlining of the abdominal wall, and went inside the abdominal cavity, into what we commonly call the belly, and such an instrument or instruments could cause injury to one of the pieces of intestine or to a major vessel or it could cause injury to the fat that covers the intestines, that we call the omentum, that is a layer of fatty apron that covers the intestines, and that can also be injured. He also had to be operated upon because with such a penetration, the wound would have to be thoroughly cleansed, irrigated, and so that risk of peritonitis and infection can be minimized, in order to do everything possible to save his life."

He also testified:

"Q. Will you tell the Court and the Jury, Doctor, what his condition was when you operated on him, when you made the incision, in other words?

"A. He had considerable amount of blood inside of his abdominal cavity, and this was due to the fact that he had sustained a laceration or a cut by this instrument or instruments in what we call the omentum, that is, the fatty apron that covers the intestines, and he also had a laceration of the lining of the intestinal cavity, the abdominal cavity, the peritoneum, from which he was bleeding, in addition to bleeding from the muscle, bleeding inside the abdominal cavity. * * *"

On cross-examination he stated: "It's far more dangerous to be struck in the belly with a knife than to administer a general anesthetic with the equipment we have nowadays.

"Q. But even with the general anesthetic there is danger of death?

"A. Even with the general anesthetic."

Shown the letter opener, Dr. Cigarroa testified that in his opinion it was such an instrument as may have caused the wound, and that a penetrating wound with such type of weapon can be·calculated to produce death.

The evidence shows that Gutierrez had been recently discharged from the Army; was 26 years old and weighed some 160 pounds and had lived all his life in Zapata; that appellant was 17 years of age, weighed about 134 pounds, and was a life long resident of San Ignacio, in Zapata County; that the appellant and Gutierrez were not acquainted and had not previously met, nor had there been any ill feeling between them prior to the day in question.

The appellant testified that he had no intent to kill Gutierrez and that he acted in self-defense. He filed application for suspended sentence and offered evidence of his good reputation as a peaceful and law abiding person.

The jury rejected the appellant's claim of self-defense and his application for suspended sentence and found against him on the issue of intent to kill.

The principal ground upon which claim for reversal is presented is the contention that the evidence is insufficient to sustain the jury's finding that appellant made the assault upon Gutierrez with the intent to kill him.

The prosecution was for the offense defined in Art. 1160 Vernon's Ann.P.C. which provides a punishment of not less than one nor more than three years for the offense of assault without malice, with intent to murder.

Malice not being alleged, and not being an essential element of the offense charged, the fact that the appellant may have acted under the influence of sudden passion aroused by an adequate cause would not be a defense. It was necessary, however, that the state prove that the appellant made the assault with the specific intent to murder him. Rodriguez v. State, 146 Tex.Cr.R. 206, 172 S.W.2d 502.

The rule appears to be that when the evidence, though meager, is such that from it the jury could logically draw the conclusion that the accused committed an assault with the intent to murder, this Court would not be authorized to hold the evidence insufficient. Daugherty v. State, 153 Tex.Cr.R. 8, 216 S.W.2d 222.

Applying such rule this Court affirmed the conviction in Moseley v. State, 158 Tex.Cr.R. 623, 259 S.W.2d 225; Bradshaw v. State, 167 Tex.Cr.R. 469, 320 S.W.2d 833; and Sadler v. State, Tex.Cr.App.,

364 S.W.2d 234. See also Caballero v. State, 172 Tex.Cr.R. 140, 354 S.W.2d 940, and cases cited.

 We are unable to agree that the record herein is wholly barren of facts or circumstances from which the jury could reasonably conclude that the appellant intended to kill Gutierrez. There was evidence from which they could find that the letter opener, in the manner of its use, was a deadly weapon and that the stab wound inflicted was a serious injury.

There was also evidence that this was not the only wound which the appellant attempted to inflict upon Gutierrez. He testified that he attempted to stab Gutierrez several times. We also point out that Gutierrez testified that he forced the knife from the hand of the appellant. Had he not done so, there is nothing in the record to indicate that the appellant would not have continued his assault.

 The remaining ground for reversal presented relates to the court's charge, for failure to insert "and not in his own self-defense, as herein defined," in the paragraphs of the charge applying the law to the facts from the standpoint of the state.

Later in his charge the court gave an unrestricted charge on self-defense. Ekern v. State, 150 Tex.Cr.R. 319, 200 S.W.2d 412; Huntsman v. State, 140 Tex.Cr.R. 62, 143 S.W.2d 587; and Griffin v. State, 150 Tex.Cr.R. 27, 198 S.W.2d 587, are authority for overruling appellant's claim of error in the charge.

The judgment is affirmed.

MORRISON, Judge (concurring).

I concur in the affirmance of this conviction because appellant testifying in his own behalf stated, "I just got angry, got my knife out and stabbed him. ✳ ✳ ✳ because he pushed me."

ON APPELLANT'S MOTION
FOR REHEARING

McDONALD, Judge.

Appellant's able counsel urges in his Motion for Rehearing the alleged failure of this Court to give due weight to paragraphs 6, 7, 8 and 10 of Article 1147, Vernon's Ann. P.C., which is the statute defining the offense of Aggravated Assault. Appellant takes the position that these provisions urged by him are to be construed as: "making an assault only an aggravated assault when a serious bodily injury is inflicted upon the person assaulted," and "when committed with premeditated design, and by the use of means calculated to inflict great bodily injury", and "when committed with (a knife or) deadly weapon under circumstances not amounting to an intent to murder or maim" —that such is only aggravated assault.

It is obvious to us that there is no omission on our part in not considering the sections of this statute brought to our attention by appellant. Clearly, the aggravated assault statute has no application in fact situations such as presented in the case at bar. That statute specifically excludes from its terms *acts which amount to an intent to murder or maim.*

We did not belabor our original opinion by discussing the holdings of the various cases cited, and we shall not do so here.

We reiterate once more that there was competent medical testimony from Dr. Cigarroa to the effect that such an instrument as the letter opener shown him may have caused the wound, and that a *penetrating wound with such type of weapon can be calculated to produce death.*

 The early case of Franklin v. State, 37 Tex.Cr.R. 113, 38 S.W. 1016, opinion by the eminent Judge Henderson, seems to correctly set forth the rule in cases of assault with intent to murder. In that case the weapon used was a sound bois d'arc stick three or four feet long, and about one and

a half inches in diameter. The prosecutor was struck on the back of the head with the stick and struck several additional blows. He was stunned and dazed from the blows and confined to his bed for several days. Judge Henderson, speaking for this Court, said: "In passing upon the intent of the party, the jury should look to the character of the weapon. If the weapon was a deadly weapon, and likely to produce great bodily harm, the jury may infer, from the use of such weapon, the intent to kill. If the weapon was not such a weapon, the jury may arrive at the intention of the party from the surrounding facts. If it was possible that death might have been inflicted by the weapon, and the defendant intended to take life, though the weapon was not a deadly weapon, still he might be guilty of an assault with intent to murder".

We have carefully reconsidered the facts in the present case and weighed them against the holdings in the cases originally cited. We remain convinced that a correct disposition was made in our original opinion; accordingly, appellant's motion for rehearing is overruled.