James Fredrick GENTSCH, Appellant,

v.

The STATE of Texas, Appellee.

No. 43798.

Court of Criminal Appeals of Texas.

June 9, 1971.

James E. Tatum, Bluford B. Sanders, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Alfred Thomas, Asst. Dist.

Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for assault to murder with malice; the jury assessed the punishment at 17 years.

The appellant presents three grounds of error, each of which challenges the sufficiency of the evidence.

First, he contends that the evidence is insufficient to establish the specific intent to murder because the evidence is insufficient "to demonstrate the weapon or instrument used was a deadly weapon per se."

Second, he contends that "the evidence is insufficient to establish the specific intent to murder as the intent cannot be logically concluded or inferred from the surrounding facts and circumstances."

And third, he contends that "the evidence is insufficient to establish the identity of the accused as the person who committed the assault upon the victim."

The indictment alleged that the appellant made an assault with the intent to kill Robert Keller on July 12, 1966.

Mrs. Ruval Keller had been married to the appellant from November of 1954 to May of 1964, when they were divorced. She had been married to her present husband, Robert Keller, since 1966.[1] She testified that after her marriage to Keller, she had not communicated with the appellant, her ex-husband, and he had not visited in their home. However, the appellant had called her on the telephone and asked to meet with her at his mother's house, and he had sent letters threatening to kill her.

She further testified that on the night in question she was seven months pregnant. She went to bed at 10 p. m., but sometime after midnight, she was awakened by what she believed was her husband's arm hitting her. "It was somebody's arm across me, hitting me. I don't know whose it was, but it kept hitting my stomach. And I tried to get him up, to tell him that he was having a nightmare, and for him to wake up." She kept screaming, "Bob, quit hitting me. Quit hitting me," but her husband never answered her. She tried to move to see what was happening but she was unable to do so because there was something on her legs and she suffered from polio. She realized there was someone else in the bed when her husband said, "It's him."

She testified that:

"A There was a tearing of the bed, and furniture was breaking; and the next thing I knew, somebody hit the bathroom door.

\*     \*     \*     \*     \*     \*

"A I saw a man hit the bathroom door. And the next thing I knew, my husband was up and somebody was running out of the bedroom and the front screen opened and I could hear footsteps going up the street, toward North Main."

Although she could not see the face of the person who hit the bathroom door, she testified that, "By just the size and the figure, I feel real sure it was my ex-husband." When they turned the lights on, she found that her husband was bleeding from the many stab wounds on his back. After wrapping an undershirt around the wounds, they went to the Heights Hospital emergency room.

Before leaving for the hospital, they found a billfold containing identification belonging to the appellant, her ex-husband.

Dr. Martin F. Scheid, a surgeon, testified that on the night in question he treated Robert Lee Keller for multiple stab wounds. He further testified that the wounds "involved the front of the chest, the neck, the back of the chest, the arms,

---

I. The date of the trial was February 6, 1969.

upper arms, and forearms." There were about 15 or 20 of these wounds, and Dr. Scheid testified that they were made by a sharp instrument, perhaps a knife. He also testified that:

"A Well, there were two potentially dangerous wounds, one on the base of the neck on the left, in this area, here (indicating). And the reason this was dangerous, is because there are a great number of nerves that supply the muscles of the arm. And the one that was probably the most serious and life-threatening occurred—"

He also stated that x-rays showed evidence of hemorrhage into the middle of the chest, which is caused by the puncture of a large vein on the inside of the chest, that a wound in that area could cause either instant death or a slow death from bleeding, and that if the wound had been an inch either way, it could have caused death.

Officer F. A. Triechel of the Houston Police Department talked with the Kellers at the hospital, received from them the billfold, and went to their home and found "that the bed was broken. Various pieces of furniture were overturned. The sheets were bloody. The back door was open. The back screen door had been tampered with. The house was just generally in a disarranged manner."

Robert Lee Keller positively identified the appellant, based on his physical appearance, as the person who stabbed him on the night in question, and testified that he was in bed asleep when the appellant attacked him. He was able to push the appellant back into the bathroom. By the time he was able to stand up, the appellant was running out the front door. He recognized the appellant because he had seen him about two weeks earlier at the appellant's stepfather's house. When he turned the lights on, he discovered that he was wounded and that there was blood all over the bed and that he could not lift his left arm. They then went to the hospital, where he gave the billfold to Officer Triechel.

He also testified that the appellant had called him on the phone after he had seen him. Part of one of these conversations was as follows:

KELLER: "Gentsch, the only thing I want you to do is to leave me and my wife alone."

GENTSCH: "All right, bastard, if you want it rough, you will get it rough."

He explained that the appellant's legs were across Mrs. Keller's legs and that Mrs. Keller could not move her legs (because of polio). He received 17 stabs wounds as a result of the incident.

As to the appellant's first contention that it was not shown that the weapon used was a deadly weapon per se, "Where there is no evidence to show that the weapon used was a deadly weapon per se, the intent of the party making the assault may be arrived at from the surrounding facts." Caballero v. State, 172 Tex.Cr.R. 140, 354 S.W.2d 940. See: Gipson v. State, Tex.Cr. App., 403 S.W.2d 794.

But, the appellant also contends that the specific intent to murder cannot be inferred from the surrounding facts and circumstances of this case.

In Trimble v. State, 148 Tex.Cr.R. 596, 190 S.W.2d 123, this Court stated the rule as follows:

"The specific intent to kill is an essential element of the offense of an assault with intent to murder. This may be established by facts or circumstances from which such intent may be inferred. If the weapon or instrument used in the commission of the assault is per se a deadly weapon or one likely to produce death from the manner in which it is used, it would justify the conclusion that the accused intended to commit murder; or where the instrument used was not a deadly weapon, but from the manner of its use and the nature of the wounds inflicted it is apparent that such was the

intent, the evidence is deemed to be sufficient."

In Ammann v. State, 145 Tex.Cr.R. 34, 165 S.W.2d 744, this Court said:

"The specific intent to kill is an essential element of the offense of assault with intent to murder. Art. 1160, P.C., Vernon's Ann.P.C. art. 1160. Such intent may be inferred when the instrument used in committing the assault is a deadly weapon. If the weapon used is not deadly, the intent to kill on the part of the accused may be ascertained from and shown by the surrounding facts and circumstances. If it is possible that death might have been inflicted by the weapon used, and if the accused intended thereby to take life by the use made thereof, the offense of assault with intent to murder is complete, even though the instrument used was not a deadly weapon."

In Blount v. State, 376 S.W.2d 844, this Court said:

"From the foregoing discussion of the various cases relied upon by the State, it is apparent in all of them that the specific intent to kill was inferred when the instrument used in the commission of the assault is a deadly weapon. Since many of these cases deal with weapons not deadly, the intent to kill on the part of the accused must be ascertained from the surrounding facts and circumstances. In all of these numerous cases affirmed by this Court the surrounding facts and circumstances show either serious wounds or wounds calculated to produce serious bodily injury or death, or an instrument calculated to cause death or serious bodily injury."

"The rule appears to be that when the evidence, though meager, is such that from it the jury could logically draw the conclusion that the accused committed an assault with the intent to murder, this Court would not be authorized to hold the evidence insufficient." Hernandez v. State, Tex.Cr.App., 375 S.W.2d 285. Considering the 17 stab wounds, at least one of which

could easily have caused death, we cannot agree that the record does not reflect facts or circumstances from which the jury could reasonably conclude that the appellant intended to kill Keller. In fact, there was evidence from which the jury could find that the weapon was deadly and that the stab wound inflicted was a serious injury.

Although the instrument that was used is unknown, the wound inflicted was serious and could have caused death, and there is evidence of ill will by the appellant.

In view of the testimony of Mr. and Mrs. Keller and the fact that the appellant's billfold was found in the bedroom where this incident occurred, there was sufficient evidence for the jury to find that the appellant was the assailant, particularly since the court charged on circumstantial evidence.

We find that the evidence is sufficient to sustain the conviction.

The judgment is affirmed.