Gooden v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-291-CR

Â Â Â Â Â MIKELE SANDLE AKA MICHAEL GOODEN,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 85th District Court
Brazos County, Texas
Trial Court # 21,316-85
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Mikele Sandle a/k/a Michael Gooden


 was convicted by a jury of aggravated robbery. See
Tex. Penal Code Ann. Â§ 29.03 (Vernon Supp. 1993). The jury found that Gooden used or
exhibited a deadly weapon during the commission of the offense and assessed punishment at fifteen
years in prison and a $2,500 fine. Gooden's sole point of error is that the evidence is insufficient
to prove that the broken bottle alleged in the indictment is a deadly weapon. 
Â Â Â Â Â Â Richard Castle, a sixteen-year-old high school student, testified that on the night of April 1,
1992, he was walking home at approximately 10 p.m. At the corner of Bryan and Martin Luther
King streets, he saw two men appear from behind a shed. As Castle approached, one of the men
broke a bottle against the curb. The same man grabbed Castle by the arm, stuck the broken bottle
to his throat, and told him to "get out of the jacket." Castle recognized the man with the bottle
as Gooden, because they had lived in the same apartment complex some years before. Castle's
jacket was black with "Raiders" spelled out on the back. A third male appeared during the
confrontation and told him to get out of the jacket. As Castle took the jacket off, he was cut
underneath his lower lip. He did not know exactly how he got cut. Gooden then struck him on
the top of his head, and one of the other assailants tried to stab him with what looked like a knife. 
Castle required thirteen stitches. He testified that, during the assault, he feared the men were
going to hurt him. Castle could not testify as to what type of bottle was used in the assault.
Â Â Â Â Â Â Harlan Pope, a detective with the Bryan Police Department, testified as an expert. He
testified that in his thirteen years of service, he had seen cases where a bottle was used as a deadly
weapon. On voir dire, Pope testified that he had not seen the broken bottle used in the assault
against Castle, had not talked to Castle, and could not form an opinion on the use of the bottle as
a deadly weapon. Pope testified, in response to a hypothetical question, that a broken bottle
placed at someone's throat would be capable of causing death and serious bodily injury. He
testified that a tearing or laceration to the throat area, which includes the jugular vein and the
trachea, could easily cause death or serious bodily injury.
Â Â Â Â Â Â The standard of review based on a sufficiency challenge is whether, after viewing the evidence
in the light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 308,
318-19 (1979); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). A deadly
weapon, as alleged in this case, is "anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury." See Tex. Penal Code Ann. Â§ 1.07(a)(11)(B)
(Vernon 1974). Whether a weapon is deadly is a question for the trier of fact. Griffin v. State,
198 S.W.2d 587, 589 (Tex. Crim. App. 1946). In determining whether a weapon is deadly, all
the facts of the case may be considered, including the shape and size of the weapon, its sharpness,
its capacity to produce death or serious bodily injury, the manner of its use, and any words spoken
by the accused. Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). A weapon may
be considered deadly if it is displayed in a manner which conveys a threat, express or implied, that
serious bodily injury or death will result. Jackson v. State, 668 S.W.2d 723, 725 (Tex.
App.âHouston [14th Dist.] 1983, pet. ref'd). When wielded as a club, a broken bottle may be
considered a deadly weapon. See Hayes v. State, 728 S.W.2d 804, 808 (Tex. Crim. App. 1987).
Â Â Â Â Â Â In Compton v. State, 759 S.W.2d 503 (Tex. App.âDallas 1988, pet. ref'd), the court found
sufficient evidence of a deadly weapon where the defendant brandished a broken beer bottle
threatening to stab people while stealing beer and candy from a convenience store. The bottle in
Compton was a quart-sized beer bottle with the bottom broken out, leaving a jagged edge. Id. at
504. The store clerk testified that he feared he would suffer serious bodily injury or death because
of the broken bottle. Id. A police officer testified that, according to his professional experience,
a broken bottle could inflict serious bodily injury or death. Id. 
Â Â Â Â Â Â Gooden argues that, because the broken bottle was not introduced into evidence and because
Pope's opinion was based on a hypothetical question, the evidence is insufficient for a deadly
weapon finding. We disagree. Although the victim was unable to describe exactly what type of
bottle was used in the assault, he was able to say that Gooden broke the bottle and held that broken
bottle against his throatâan action capable of causing serious bodily injury or death, according
to Pope. A rational trier of fact could have found beyond a reasonable doubt that the broken bottle
was, in the manner of its use or intended use, capable of causing death or serious bodily injury. 
See Matson, 819 S.W.2d at 843; Tex. Penal Code Ann. Â§ 1.07(a)(11)(B).
Â Â Â Â Â Â We overrule the point and affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BILL VANCE
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Thomas,
Â Â Â Â Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Affirmed 
Opinion delivered and filed September 15, 1993
Do not publish 



serif"'>After waiving
his rights, Garcia admitted that he voluntarily came to the police station to
make a statement and that no one had forced, coerced, or made promises to him
in exchange for any statements made to police.  Garcia then admitted being
involved in the charged offenses, but he blamed K.M., the seven-year-old child
victim in this case.Â  Garcia told Sergeant Martinez and Officer Caldwell the
following:

Basically that he hadÂthat some of the
information about the sexual abuse was true, but that the child was the one
that wanted him to touch him [sic].Â  The childÂIÂm sorry, the child was the one
that wanted him to touch her, and pretty much was blaming the child throughout
the whole interview.Â  

Â 

Garcia spoke to
Sergeant Martinez and Officer Caldwell for approximately thirty minutes until
he ended the interview by saying ÂThat is all I have to say.ÂÂ  Garcia then left
the police station on his own accord.Â  Sergeant Martinez did not administer the
polygraph test because Garcia confessed to the crimes charged.

During the
interview, both Sergeant Martinez and Officer Caldwell wore civilian clothes,
and both denied that Garcia was in custody or formally arrested at the time he
made his confession.Â  Garcia was never handcuffed, deprived of water or
restroom breaks, or deprived of his right to counsel.Â  Sergeant Martinez
explained to Garcia that he could terminate the interview at any time.Â  On
cross-examination, Sergeant Martinez acknowledged that Garcia told him that he
had surgery about a month before the interview, and Garcia did tell him that he
had high blood pressure and had consumed Âseven to eight beersÂ the night
before the interview.Â  Sergeant Martinez testified that these factors could
have affected the polygraph examination, but a preliminary examination to
determine what effect, if any, these factors would have had on the polygraph
examination was never conducted because Garcia confessed.Â  With regard to
GarciaÂs purported medical issues, Officer Caldwell recalled Garcia merely
stating that Âhe was diabetic and couldnÂt get an erection.ÂÂ  Officer Caldwell
testified that Garcia did not appear to be ill on the day he gave his
confession.Â  Furthermore, Sergeant Martinez denied that Garcia was promised
anything in exchange for his confession.

Garcia also
testified at the hearing on his motion to suppress.Â  His wife took him to the
police station on August 8, 2008 to make a statement, and he said that Sergeant
Martinez did not read him any warnings before starting the interview.Â  Garcia
told Sergeant Martinez that he was not feeling well.Â  He testified that Sergeant
Martinez read Garcia his Miranda rights only after discussing the facts
of the case and that Sergeant Martinez raised his voice at him during the
interview.Â  Garcia said that he is diabetic; that he had not eaten anything on
the morning of the interview; and that he had consumed beer the night before
the interview.Â  Regarding his confession, Garcia testified that he made the
statements only because Sergeant Martinez told him that he could leave the
police station if he confessed; he only told Sergeant Martinez and Officer
Caldwell what they wanted to hear so that he could leave.

At the hearing,
Garcia recanted his confession and denied all of the allegations against him.Â  He
also testified that he was nervous talking to police at first, but he later
admitted that he was not scared of Sergeant Martinez and Officer Caldwell.Â  On
cross-examination, Garcia admitted that Sergeant Martinez told him that he
could stop the interview at any time and that he could leave.Â  Garcia also
admitted that neither Sergeant Martinez nor Officer Caldwell promised him
anything; that he was voluntarily present at the police station; and that
Sergeant Martinez had informed him of his Miranda rights.

The evidence
does not support a finding that Garcia was in custody at the time he made his
confession.Â  Garcia voluntarily came to the police station to make a statement,
and he was never restrained, handcuffed, or formally arrested.Â  Garcia was not
deprived of water, restroom breaks, or the right to counsel.Â  Garcia was
informed that he was free to terminate the interview at any time, and Garcia
did, in fact, terminate the interview by stating, ÂThat is all I have to say.ÂÂ 
He then left the police station on his own accord, further demonstrating that
he was free to leave at any time.Â  Given this evidence, we conclude that, in
viewing the evidence in the light most favorable to the trial courtÂs ruling,
Garcia was free to leave at any time during the interview; thus, he was not in
police custody at the time he confessed.Â  See Herrera, 241 S.W.3d
at 526; see also Turner, 252 S.W.3d at 580.

Nevertheless,
Garcia argues that Sergeant Martinez promised him he could leave only if he
confessed and that he did not understand his rights because of his medical
issues and his illiteracy.[2]Â 
But both Sergeant Martinez and Officer Caldwell testified that Garcia appeared
to understand his rights and that he did not appear to be ill when he
confessed.Â  In denying GarciaÂs motion to suppress, the trial court obviously accepted
their testimony and rejected GarciaÂs testimony.Â  The trial court is the sole
judge of the credibility of the witnesses and the weight to be accorded to
their testimony.Â  See St. George v. State, 237 S.W.3d 720, 725 (Tex.
Crim. App. 2007); Campos v. State, 977 S.W.2d 458, 465 (Tex. App.ÂWaco
1998, no pet.).Â  The trial court may believe or disbelieve any or all of the
testimony, including that of the accused.Â  See Green v. State, 934
S.W.2d 92, 98 (Tex. Crim. App. 1996); Campos, 977 S.W.2d at 465.Â  We
will not disturb the trial courtÂs ruling absent a clear abuse of discretion.Â  Campos,
977 S.W.2d at 465.Â  Considering all of the evidence regarding the circumstances
surrounding the taking of GarciaÂs statement, including the fact that Garcia
was not in police custody at the time he confessed, we find that the trial
courtÂs denial of GarciaÂs motion to suppress was not an abuse of discretion.Â 
Accordingly, we overrule GarciaÂs first issue. 

In his second
issue, Garcia asserts that his trial counsel was ineffective.Â  Garcia contends
that Âthere are several deficiencies when considered in their totality amount
to ineffective assistance of counsel.ÂÂ  In particular, Garcia alleges that
trial counsel was ineffective because:Â  (1) he allowed a potential juror to
exit the courtroom without objecting and allowed voir dire to continue without
any mention of whether the potential juror had returned; (2) he failed to
challenge for cause or exercise a peremptory challenge against a juror whose
college roommate had been the victim of sexual assault; (3) he failed to make
an opening statement; (4) he failed to object to bolstering evidence the State
allegedly presented to explain why a child might lie or cover up sexual abuse;
(5) he failed to object to the admission of an expert report that allegedly
contained hearsay; (6) he failed to secure the testimony of Jane Riley, the
pediatric nurse who conducted the sexual assault examination of K.M.; (7) he
violated the StateÂs motion in limine by referring to GarciaÂs immigration
status; and (8) he failed to cross-examine K.M.

The United
States Constitution, the Texas Constitution, and article 1.051 of the Code of Criminal
Procedure guarantee an accused the right to reasonably effective assistance of
counsel.Â  See U.S. Const.
amend. VI; Tex. Const. art. I, Â§
10; Tex. Code Crim. Proc. Ann. art.
1.051 (Vernon Supp. 2010); see also Strickland v. Washington, 466 U.S.
668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); Ex parte Gonzales,
945 S.W.2d 830, 835 (Tex. Crim. App. 1997).Â  To prove ineffective assistance of
counsel, Garcia must show that:Â  (1) trial counselÂs representation fell below
an objective standard of reasonableness, based on the prevailing professional
norms; and (2) there is a reasonable probability that, but for trial counselÂs
deficient performance, the result of the proceeding would have been different.Â 
See Strickland, 466 U.S. at 687-95, 104 S.Ct. at 2064-69; Dewberry v.
State, 4 S.W.3d 735, 737 (Tex. Crim. App. 1999).Â  Whether this test has
been met is to be judged on appeal by the totality of the representation, not by
isolated acts or omissions.Â  Rodriguez v. State, 899 S.W.2d 658, 665
(Tex. Crim. App. 1995).Â  Garcia has the burden of proving ineffective
assistance of counsel by a preponderance of the evidence.Â  Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Â Â Â Â Â Â Â Â Â Â Â  Our review of counselÂs
representation is highly deferential, and we will find ineffective assistance
only if Garcia overcomes the strong presumption that his counselÂs conduct fell
within the range of reasonable professional assistance.Â  See Strickland,
466 U.S. at 689, 104 S.Ct. at 2065.Â  The right to Âreasonably effective
assistance of counselÂ does not guarantee errorless counsel or counsel whose
competency is judged by perfect hindsight.Â  Saylor v. State, 660 S.W.2d
822, 824 (Tex. Crim. App. 1983).Â  Moreover, the acts and omissions that form
the basis of GarciaÂs claims of ineffective assistance must be supported by the
record.Â  Thompson, 9 S.W.3d at 814.Â  A silent record that provides no
explanation for counselÂs actions usually will not overcome the strong
presumption of reasonable assistance.Â  Id. at 813-14.Â  To warrant
reversal without affording counsel an opportunity to explain his actions, Âthe
challenged conduct must be Âso outrageous that no competent attorney would have
engaged in it.ÂÂÂ  Roberts v. State, 220 S.W.3d 521, 533 (Tex. Crim. App.
2007).

Here, Garcia did not raise the issue of
ineffective assistance of counsel in his motions for new trial.Â  Thus, his
trial counsel was not afforded an opportunity to explain his trial strategy or
address the numerous complaints Garcia makes on appeal.Â  In situations where
trial counsel has not been afforded an opportunity to explain his actions, an
appellate court will usually reject the complaint in a summary fashion.Â  See
Scheanette v. State, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004); Hervey
v. State, 131 S.W.3d 561, 564 (Tex. App.ÂWaco 2004, no pet.) (Â[T]rial
counsel should ordinarily be afforded an opportunity to explain the actions
taken or not taken, as the case may be, before being condemned as
unprofessional and incompetent.Â).Â  Because the record is silent as to trial
counselÂs trial strategy and because Garcia has not adequately explained how
trial counselÂs actions were so outrageous that no competent attorney would
have engaged in them, we cannot say that the record supports a finding that
trial counsel was ineffective.Â  See Roberts, 220 S.W.3d at 533.Â  We
overrule GarciaÂs second issue.

Having overruled
GarciaÂs two issues, we affirm the judgment of the trial court.

Â Â Â Â Â Â Â Â Â Â Â  

Â 

REX D. DAVIS

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Before Chief
Justice Gray,

Â Â Â Â Â Â Â Â Â Â Â  Justice
Davis, and

Â Â Â Â Â Â Â Â Â Â Â  Justice
Scoggins

Affirmed

Opinion
delivered and filed August 3, 2011

[CRPM]









[1] In Herrera, the court concluded
that the construction of ÂcustodyÂ with respect to article 38.22 is consistent
with the meaning of ÂcustodyÂ for purposes of Miranda.Â  Herrera,
241 S.W.3d at 526.





[2] The record indicates that Garcia was
informed of his Miranda rights on at least two occasions during the
interview and that he signed waivers of those rights each time.