NUMBERS 13-05-279-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


BEVY LEE WILSON, Appellant,

 

v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 117th District Court of Nueces County, Texas

 


MEMORANDUM OPINION


Before Justices Garza, Benavides, and Wittig (1)


Memorandum Opinion by Justice Wittig


 After pleading not guilty, appellant, Bevy Lee Wilson, was tried before a jury. He was
found guilty of capital murder and assessed punishment of life imprisonment. (2) Appellant
brings four issues on appeal. Other procedural and factual background are known to the
parties and will not be reiterated. Tex. R. App. P. 47.4. We will affirm.

 1. Autopsy Photos

 In his first issue, appellant challenges the trial court's admission of multiple autopsy
photos. Appellant objected to the photos as irrelevant, unduly prejudicial and duplicitous. 
Appellant did not object to diagrams depicting the many injuries to the decedents, a father
and his 10 year old son. The medical examiner testified at length about the injuries
observed at autopsies. The father suffered 10 stab wounds including a fatal knife wound
to the head, 7 incised wounds, and 19 blunt force wounds caused by a hammer or metal
bar. The cause of death was opined to be blunt force trauma and sharp force injuries to the
head. The medical examiner further testified that the son sustained 28 blunt force wounds
consistent with a hammer or metal bar, concluding the cause of death was multiple blunt
force injuries to the head and body.

 The defense was granted a running objection to the photos. Appellant also objected
to two enlarged photos (8 x 8 and 8 x 10, SX 42 and SX 43) of the victims taken prior to
death. The basis of these objections was relevance because identity was not in issue and
that the photos were prejudicial and not accurate depictions. Appellant also objected to the
State's offer of two enlarged photos showing the victims as found at the scene of the
murders. Considerable blood is depicted, some on the wall and some running down the
rear steps. The court also admitted, over objection, 45 close-up color photos, including
some with the victims' heads shaved, one with a steak knife protruding from his right
temple, nude photos, one with chest wall opened, one with a shaved head mounted on a
morticians's head block dripping blood, and an 8 x 10 depicting hammer wounds to the
head.

 Appellant argues that Tex R. Evid. 403, Whaley v. State, 367 S.W.2d 703, 704 (Tex.
Crim. App. 1963), and other authorities, indicate that the probative value of the numerous
photos is substantially outweighed by unfair prejudice. In Whaley, over proper objection,
the court permitted the State to offer into evidence three pictures of the nude body of the
deceased and two pictures of the automobile in which he had been seated which showed
large pools of blood. Id. None of these pictures solved any issue in the case, were highly
inflammatory and should not have been admitted in evidence. Id. According to appellant,
the photos in this case should have been excluded because they are so horrifying or
appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally
deciding the critical issue after viewing the photos. See Tidrow v. State, 916 S.W.2d 623,
631 (Tex. App.-Fort Worth, 1996, no pet.). Diagrams and the medical examiner's testimony
adequately described the injuries, and the probative value was light given that there was no
question of the identity of the victims, nor was the cause of death disputed. The real issue
of the case was the identity of the killer. Appellant claims particular prejudice when the
autopsy photos are compared with the live photos of the victims.

 The State counters that Rule 403 favors the admission of relevant evidence and
carries a presumption that relevant evidence will be more probative than prejudicial, citing 
Shuffield v. State, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). Shuffield instructs: a Rule
403 analysis should include, but is not limited to, the following factors: (1) how probative
the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but
nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and

(4) the proponent's need for the evidence. Id. 

 A reviewing court should, using an abuse of discretion standard, "do more than
decide whether the trial judge did in fact conduct the required balancing between probative
and prejudicial values; 'the trial court's determination must be reasonable in view of all
relevant facts.'" Id. We should consider: the number of photographs, the size of the
photograph, whether it is in color or black and white, the detail shown in the photograph,
whether the photograph is gruesome, whether the body is naked or clothed, and whether
the body has been altered since the crime in some way that might enhance the
gruesomeness of the photograph to the appellant's detriment. Id. 

 The sheer number of photos, seemingly excessive, is mitigated by the fact that there
were two victims. Most of the photos are 4 x 6, and a few are 8 x 10. The photos are in
color and some depict considerable amounts of blood. The detail is graphic. Several
photos, particularly of the boy, are nude, while most show the victims clothed. A number
of the photos show only the hands or arms of the victims. The most gruesome photos
include State's exhibits numbers 230, 241, 242, 245, 250, 260, 263, and 266.

 The medical examiner referred to the photos while explaining his testimony. In the
initial order of his testimony, he referred to the photos as follows: 231, 240, 242, 230, 229,
224, 225, 235, 236, 228, 241, 227, 233 (relating to the injuries to the father, Richard
Carbaugh); and 245, 264, 265, 268, 264, 266, 259, 260, 254, 267, 247, 256, 247, 243, 252,
and 240 (relating to the injuries to the son, Dominick Carbaugh). Thus, most of the photos
were used by the ME in explaining his testimony. Photo 241, depicting the scalp pulled
back, was the only way to show the damage to the bone, according to the ME. Photo 266,
depicting the boy with his scalp "reflected" [sic], was to demonstrate the damage of an open
fracture.

 Our review is limited to determining whether the danger of unfair prejudice
substantially outweighs the photo's probative value. Tex. R. Evid. 403; Barnes v. State,
876 S.W.2d 316, 326 (Tex. Crim. App. 1994). Where pictorial evidence will help the jury to
understand verbal testimony, such as the technical language used by a medical doctor in
describing the injuries sustained by a victim of a crime, a trial judge does not abuse his
discretion in admitting these photographs. Harris v. State, 661 S.W.2d 106, 107-08 (Tex.
Crim. App. 1983) (citing Williams v. State, 604 S.W.2d 146 (Tex. Crim. App.1980); Bailey
v. State, 532 S.W.2d 316 (Tex. Crim. App.1975); Griffin v. State, 198 S.W.2d 587 (Tex.
Crim. App. 1946)). This is true even if the photographs were taken during or after an
autopsy. Id. Harris dealt with photos taken after the victim's skin had been deflected from
the victim's skull, the only way the skull fracture was visible. Id. 

 Assuming arguendo that some or all of the photographs were cumulative, appellant
has shown us no basis for concluding that a reasonable trial judge would necessarily find
that their probativeness was substantially outweighed by their detrimental effect on the
efficiency of the trial process. Alvarado v. State, 912 S.W.2d 199, 213 (Tex. Crim. App.
1995). Moreover, even if there were error in the admission of these photographs, we would
conclude that the error was harmless under Rule 44.2(b) of the Texas Rules of Appellate
Procedure. See Tex. R. App. P. 44.2(b); Prible v. State, 175 S.W.3d 724, 737 (Tex. Crim.
App. 2005). We will not overturn a case for non-constitutional error if, after examining the
record as a whole, we have a fair assurance that it did not influence the jury, or influenced
them only slightly. Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). After
examining the record of appellant's trial as a whole, including the weight of other evidence,
the testimony of the eye witness and expert testimony, we have fair assurance that the
error, if any, did not have a substantial and injurious effect or influence in determining the
jury's verdict. Casey v. State, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). 

 In sum, we find no abuse of discretion on the part of the trial court in the admission
of the photographs. Id. (citing Narvaiz v. State, 840 S.W.2d at 428-430; Burdine v. State,
719 S.W.2d 309, 317 (Tex. Crim. App.1986)). (3) We overrule appellant's first issue.

 2. Prosecutor's Comments

 In his second issue, appellant complains the trial court erred by not granting his
motion for new trial due to the prosecutor's comment regarding the defendant's failure to
testify. During the closing agreements, the prosecutor discussed appellant's statements
made at a bar after the homicides. In his argument he stated:

 He came in.... He was kind of dazed and nervous and sweaty and out of it. 
And what did he say? 'There is no bond, no special bond like the one
between a father and a son. They should always be together.' You sure
made certain of that, didn't you Mr. Wilson?

 

 Defense counsel objected, and requested an instruction to disregard, which was
given. Counsel then asked for a mistrial which was denied. The record reflected that the
prosecutor turned and challenged the defendant and showed him a photograph. The
prosecutor also argued: "And Judge, I did not state a question to him. I said, 'He made
sure of that.' And I'll go on to say this is the position."

 We agree with appellant, in principle, that a comment on an accused's failure to
testify violates the accused's state and federal constitutional privileges against
self-incrimination. Campbell v. State, 900 S.W.2d 763, 766 (Tex. App.-Waco 1995, no
pet.). Such a comment also violates article 38.08 which prohibits the State from alluding
to or commenting on an accused's failure to testify. See Tex. Code Crim. Proc. art. 38.08
(Vernon 2002). "The test employed is whether the language used was manifestly intended
or was of such character that the jury would naturally and necessarily take it to be a
comment on the accused's failure to testify." Caldwell v. State, 818 S.W.2d 790, 800 (Tex.
Crim. App.1991) (quoting Dickinson v. State, 685 S.W.2d 320, 323 (Tex. Crim. App.1984)). 
We review the argument from the perspective of the jury. Swallow v. State, 829 S.W.2d
223, 225 (Tex. Crim. App.1992); Williams v. State, 946 S.W.2d 886, 903 (Tex.App.--Waco
1997, no pet.). To be offensive, the argument must be more than "an implied or indirect
allusion" to the failure of the accused to testify. Swallow, 829 S.W.2d at 225; Williams, 946
S.W.2d at 903. Argument which is reasonably susceptible of two different interpretations,
one of which implicates the accused's failure to testify, and one which does not, "would not
necessarily and naturally be understood by the jury to refer to Appellant's failure to testify." 
 Caldwell, 818 S.W.2d at 800-01.

 A mistrial is used to halt trial proceedings when error is so prejudicial that expenditure
of further time and expense would be wasteful and futile. Ladd v. State, 3 S.W.3d 547, 567
(Tex. Crim. App.1999). A trial court may properly exercise its discretion to declare a mistrial
if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but
would have to be reversed on appeal due to an obvious procedural error. Id. (citing Sewell
v. State, 696 S.W.2d 559, 560 (Tex. Crim. App.1983)). The determination of whether a
given error necessitates a mistrial must be made by examining the particular facts of the
case. Id. (citing Hernandez v. State, 805 S.W.2d 409, 413-414 (Tex. Crim. App.1990)). 

 Appellant cites two material cases illustrative of improper comment by a prosecutor. 
In Hawk, the State argued: "There was silence out there that night of that arrest because
nobody denied-" Hawk v. State, 482 S.W.2d 183, 184 (Tex. Crim. App. 1972). Next,
Montoya presented a situation in which the defendant testified in the guilt/innocense phase
but not in the punishment phase. Montoya v. State, 744 S.W.2d 15 (Tex. Crim. App.
1987), overruled on other grounds, Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App.
1998.) There the State argued: "What do we hear from this man over here that it couldn't
be deliberately, all my prior conduct, all these past actions, that the man that I am is not
such that I'm going to commit acts of violence in the future and I did it?" Montoya, 744
S.W.2d at 34. While it is a matter of degree, in our case the thrust of the argument was to
point to the defendant's own admission at a bar after the killings. The State argued that
appellant made sure of it, "you made certain of that didn't you, Mr. Wilson?" From the
perspective of the jury, the comment could well be viewed as a rhetorical question. Thus,
the reference would be more of an implied or indirect allusion to the failure of the accused
to testify. See Swallow, 829 S.W.2d at 225.

 Alternatively, the State argues, and we agree, that error, if any, associated with an
improper comment by the prosecutor may be cured by an instruction to disregard. Long
v. State, 823 S.W.2d 259, 269-70 (Tex. Crim. App. 1991); see also Ovalle v. State, 13
S.W.3d 774, 783 (Tex. Crim. App. 2000). A curative instruction is sufficient unless the
remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such
an admonishment. Long, 823 S.W.2d at 269-70 (citing Mckay v. State, 707 S.W.2d 23
(Tex.Civ.App.1985), and Logan v. State, 698 S.W.2d 680 (Tex. Crim. App.1985)). Based
upon our review of the record, we conclude the prosecutor's comments were not so
prejudicial that they could not be cured by the prompt admonition of the trial judge to the
jury on the defendant's right not to testify. Id.; see also Ladd, 3 S.W.3d at 567. Appellant's
second issue is overruled. 

 3. Qualifications of Expert

 In his third issue, appellant complains the trial court abused her discretion by refusing
to allow a portion of his blood expert's opinion. The defense sought to have an expert
Karen Scalise testify that the State's eye witness Sower's testimony was not consistent with
blood spatters on Sower and on the defendant. For example, blood stains on the back of
appellant's clothes were inconsistent with his committing the murders. And lack of blood
on Sower's pants, was inconsistent with his testimony that he had been present during the
murders but did not later change clothes. Appellant cites Alvarado, 912 S.W.2d. 215-16. 
There the police expert based his bloodstain pattern interpretation on general principles of
physics and mathematics. Id. He received more than 60 hours of training from both the
Houston and El Paso police departments. Id. He read a book on the subject and the
methods used were of the type relied upon by experts in the field. Id. The Alvarado court
goes on to outline three conditions to be met to enable an expert to testify:

 Under Rule 702, the trial court, before admitting expert testimony, must be
satisfied that three conditions are met: (1) that the witness qualifies as an
expert by reason of his knowledge, skill, experience, training, or education; 
(2) that the subject matter of the testimony is an appropriate one for expert
testimony; and (3) that admitting the expert testimony will actually assist the
factfinder in deciding the case.


Id. 

 The Texas Rules of Evidence set out three separate conditions addressing the
admissibility of expert testimony. First, Rule 104(a) requires that "[p]reliminary questions
concerning the qualification of a person to be a witness . . . be determined by the court . .
. ." Tex R. Evid. 104(a). Second, Rule 702 states: "If scientific, technical, or other
specialized knowledge will assist the trier of fact to understand the evidence or to determine
a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or
education may testify thereto in the form of an opinion or otherwise." Tex R. Evid. 702. And
third, Rules 401 and 402 render testimony admissible only if it "tend[s] to make the
existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence." Tex R. Evid. 401, 402;
see Vela v. State, 209 S.W.3d. 128, 130-31 (Tex. Crim. App. 2006).

 In Rodgers v. State, the Court instructs that an appellate court should consider three
criteria when determining whether a trial court abused its discretion in evaluating the
qualifications as an expert: (1) "is the field of expertise complex?" ; (2) "how conclusive is
the expert's opinion?" ; and (3) "how central is the area of expertise to the resolution of the
lawsuit?" Rodgers v. State, 205 S.W.3d 525, 528, (Tex. Crim. App. 2006).

 The proffered expert, Scalise, had a bachelor's degree in natural science with a
major in biology, chemistry, and physics. She took a one week seminar in basic spatter
interpretation when she was with the DPS. Under questioning by the court, the witness
testified that all DPS DNA personnel had some basic training in blood spatter interpretation
but at some point in time the department only allowed two people to do spatter
interpretation. "And so, basically, DNA analysts with the department don't do a lot of blood
spatter work; none of them. There are two people who are qualified and one is Pat sitting
right here, and the other is a senior analyst in the McAllen lab, and basically, they're the
only two people at DPS who are allowed to testify on blood spatter." (4) The witness was not
allowed to take proficiency testing in blood spatter while with the State. She did some
private work on spatter after she left the DPS, however she took no further training in this
area. She testified once as an expert in spatter while at the DPS lab ("basic"), but was not
trial qualified as an expert in spatter since leaving and going into private practice. In her
one prior expert appearance in the area of blood spatter, here testimony was about "basic
blood spatter, crime scene investigation, serology." 

 In the instant case, the trial court allowed Scalise to testify as an expert in DNA and
DPS protocol. (5) She was also qualified by the trial court to testify as to blood spatters found
on clothing and/or articles at the crime scene as it related to the selection of a particular
blood sample for DNA testing. The trial court gave a thoughtful, detailed, and specific ruling
allowing some areas of expertise and disallowing others.

 Scalise's own testimony about DPS protocol regarding blood spatter would seem to
indicate that the department considered the issue of spatter somewhat complex and
therefore limited those it deem qualified to testify to only two. In appellant's authority
Alvarado, the discussion of the expert qualifications is very limited, but would lend itself to
the view that blood spatter is a not so complex application of the laws of physics. See
Alvarado, 912 S.W.2d at 215-16 (finding the expert testimony "generally appropriate'). (6) 
The other Rodgers factors indicate that indeed Scalise's proffered testimony was at least
moderately conclusive and the expertise required was indeed central to the resolution of the
lawsuit in appellant's favor. Rodgers, 205 S.W.3d at 525. 

 The trial judge, within her discretion, could well have concluded, based on the
testimony, that either the proffered testimony was beyond "basic" blood spatter opinions,
or that Scalise did not have sufficient background in this particular field for the degree of
complexity of this specific case. This record would support her implied finding that the
expert's degree of education, training, or experience in blood spatter was lacking. And that
background is central to the area of expertise required to resolve the lawsuit. See Vela
209 S.W.3d at 131. (7) The trial court's decision may not be disturbed on appeal absent an
abuse of discretion. Joiner v. State, 825 S.W.2d 701, 708 (Tex. Crim. App.1992). We find
no abuse of discretion in the narrow partial exclusion of Scalise's spatter testimony based
upon the record before us. See id. 

 4. Instruction Regarding Accomplice Witness Testimony

 Appellant argues error in the court's charge because of its failure to give the
requested instruction on accomplice witness testimony. He argues that the only eye
witness, Sower, was an accomplice and his damaging testimony against appellant required
the accomplice instruction. Appellant did request such an instruction, but did not request
a question as to whether or not Sower was an accomplice. He argues from McFarland. 
McFarland v. State, 928 S.W.2d 482, 514 (Tex. Crim. App. 1996). "An accomplice witness
is someone who has participated with someone else before, during or after the commission
of a crime." Id. Charging error is preserved by a specific written request or dictated
objection to the charge. Tex. Code Crim. Proc. arts. 36.13 and 36.16 (Vernon 2004).

 Appellant contends Sower failed to report the crime to police, fabricated a sexual
assault for appellant's supposed motive, lied to police about his presence at the crime
scene, blood was found under the bill of his cap, disposed of one of the murder weapons
and failed to tell the police. Other evidence tied Sower to the crime scene.

 The State counters that the trial court did not err because Sower was not an
accomplice. It cites Garza Garza v. State, 788 S.W.2d 651, 656 (Tex. App.-Corpus Christi
1990, no pet.). In Garza Garza, the appellant denied involvement in Gonzales' death and
testified that the witness killed Gonzales. Id. We held that appellant's testimony did not
raise the issue of whether the witness was an accomplice witness, rather that his testimony
stated the witness was the primary actor. Id. The same factual scenario presents here. 
Appellant did not claim that Sower assisted in the crime so as to become an accomplice. 
 Like the appellant in Garza Garza, appellant here claimed that Sower committed the double
murders. Appellant argued he himself was merely present at the crime scene. No evidence
suggested Sower was an accomplice to appellant who acted as a principal. Appellant used
the available evidence to argue that he was innocent and that Sower acted alone. The
State argued to the contrary.

 An accomplice witness is someone who has participated with someone else before,
during or after the commission of a crime. Kunkle v. State, 771 S.W.2d 435, 439 (Tex.
Crim. App. 1986)(citing Harris v. State, 645 S.W.2d 447 (Tex. Crim. App.1983); Russell v.
State, 598 S.W.2d 238 (Tex. Crim. App.1980); Carrillo v. State, 591 S.W.2d 876 (Tex. Crim.
App.1979); Arney v. State, 580 S.W.2d 836 (Tex. Crim. App.1979); Villarreal v. State, 576
S.W.2d 51 (Tex. Crim. App.1978); Ferguson v. State, 573 S.W.2d 516 (Tex. Crim.
App.1978)). A witness is not an accomplice witness merely because he or she knew of the
offense and did not disclose it, or even concealed it. Id. The witness' presence at the
scene of the crime does not render that witness an accomplice witness. Id. Rather, an
accomplice-witness is someone who assists the accused before or during the commission
of an offense. Crank v. State, 761 S.W.2d 328, 349 (Tex. Crim. App.1988); see also Tex.
Penal Code § 7.03 (Vernon 2004) (in prosecution in which an actor's criminal responsibility
is based on the conduct of another, the actor may be convicted on proof of commission of
the offense and that he was a party to its commission.)

 Here Sower accused appellant as the sole actor. Appellant in turn, argued that
Sower was the lone murderer.

 We hold that Sower was not an accomplice witness and therefore appellant was not
entitled to the requested instruction. See Garza Garza, 788 S.W.2d at 656. Appellant's last
issue is overruled. The judgment of the trial court is affirmed.

 


 

 DON WITTIG,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 30th day of August, 2007.
1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to the government code. See Tex. Gov't Code Ann. § 74.003 (Vernon 2005).

2. In a related case, appellant was assessed 20 years based upon a finding of true on the State's Motion to
Revoke Probation. See Bevy Wilson vs. State of Texas, 13-15-280-CV.
3. Appellant's relevancy issue concerning the photos taken of the deceased while alive also fails because the
photos demonstrate the normal appearance of the victims before the infliction of the wounds. Tex. R. Evid. 
401 (evidence having any tendency to make the existence of any fact of consequence more or less probable). 

4. The witness candidly limited her own expertise in the field of blood spatter.
5. Scalise's impressive background includes a very extensive and proficient background in DNA; she has
testified in this area in over 100 cases.
6. The law of expert qualifications has greatly expanded since this relatively early case.
7. We view the trial court's exclusion to be on the basis of expertise rather than reliability.